[Civ. No. 12023. First Dist., Div. One. Oct. 14, 1942.]

WALLACE T. PARTCH, Appellant, v. FRANK P. ADAMS et al., Respondents.

(1)

James H. Boyer for Appellant.

Frank P. Adams in pro per., and Dinkelspiel & Dinkelspiel for Respondents.

PETERS, P. J.—Plaintiff appeals from a judgment rendered in an action to quiet his title to 812½ shares of stock of defendant Acampo Winery and Distilleries, Incorporated. The trial court determined that 750 shares claimed by plaintiff were the property of defendant Adams, while the remaining 62½ shares were held to be the property of defendant Propper. Propper has since died and his administrator has

been properly substituted. The appeal is taken on a bill of exceptions.

Plaintiff Partch and defendant Adams are both judgment creditors of one Mathews, who owned the 812½ shares of stock of the Acampo Winery and Distilleries, Incorporated, that are the subject of this action. Both litigants predicate their claim to ownership of this stock as purchasers at execution sales had upon their respective judgments. Propper predicates his claim upon his purchase at a separate execution sale of 62½ shares of the Mathews stock, which execution sale was had upon the judgment in favor of Adams against Mathews.

Partch caused execution to be levied on the 812½ shares in Sacramento County on October 20, 1938, and purchased at execution sale on November 3, 1938. The trial court found that Adams was entitled to priority as to the 750 shares by virtue of an execution levied in San Joaquin County on July 27, 1938, pursuant to which levy Adams purchased at execution sale on November 21, 1938. The trial court also found that Propper was entitled to priority over both Partch and Adams as to 62½ shares, by virtue of a levy of execution and sale thereunder in San Joaquin County in 1937.

It will be noted that both Adams and Propper claim by virtue of levies and execution sales had in San Joaquin County, while Partch claims by virtue of a levy and execution sale in Sacramento County. The main contention of Partch on this appeal is that the stock was not subject to execution levy or sale in San Joaquin County, but only in Sacramento County, that county being designated by the articles of incorporation of the Acampo Winery and Distilleries, Incorporated, as the principal place of business of the corporation. Appellant further urges that even if the levies and sales were proper in San Joaquin County, Adams and Propper failed to establish their priority, it being contended that the evidence shows such priority in Partch.

Strangely enough, there appears to be no case in California determining the proper situs of corporate stock of a domestic corporation for the purpose of attachment or execution, and there is little authority in other jurisdictions. Appellant urges that the sole situs of such stock for the purposes of attachment or execution is the legal domicile of the corporation, that is, the county of the principal place of business as designated in the articles, while respondents urge that, although such county is undoubtedly a proper county, such attachment

or execution can also be had in the county of the domicile in fact of the corporation.

For many purposes, such as taxation, stock in a corporation follows the domicile of its owner. But for the purposes of attachment and execution, the stock is located where the corporation is legally located. At common law, shares of stock being intangible, and therefore incapable of manual seizure, were not subject to attachment or execution. (Fletcher, Cyclopedia of the Law of Private Corporations, (perm. ed.) vol. 10, p. 70, § 4759.) Whatever right exists in California to reach such stock, exists solely by statute. Under the provisions of section 13 of the Uniform Stock Transfer Act (partially adopted in this state) no attachment or levy is valid unless the certificate of stock is actually and physically seized by the officer making the attachment or levy. California failed to enact that provision of the uniform act. In this state the location of the certificate is of no consequence. Under section 699 of the Code of Civil Procedure it is not necessary for the sheriff to take physical possession of the certificates in order to hold a valid sale on execution of the shares. The sheriff simply gives the purchaser at such sale a certificate of sale which conveys all the right the debtor had.

The basic statutory provisions are four in number. Section 541 of the Code of Civil Procedure provides that: ''The rights or shares which the defendant may have in the stock of any corporation or company . . . may be attached, and if judgment be recovered, be sold to satisfy the judgment and execution.''

Section 542, subdivision 4, provides the manner by which shares of stock must be attached. It provides: ''Stocks or shares . . . of any corporation or company, must be attached by leaving with the president, vice president, or other head of the same, or the secretary, assistant secretary, cashier, assistant cashier, or any managing agent, thereof, a copy of the writ, and a notice stating that the stock or interest of the defendant is attached, in pursuance of such writ.''

Section 688 of the Code of Civil Procedure is the section listing the property subject to execution. So far as shares of stock are concerned, it provides that such shares ''may be levied upon or released from levy in like manner as like property may be attached or released from attachment.''

Section 694 of the Code of Civil Procedure provides how execution sales shall be conducted. So far as is pertinent here, it provides that: ''All sales of property under execu-

tion . . . must be held in the county where said property or some part thereof is situated. . . .''

■ As already pointed out, the articles of incorporation of the Acampo Wineries and Distilleries, Incorporated, a domestic corporation, designated Sacramento County as the location of its principal office and place of business. The trial court found that the corporation ''did not maintain an office for the transaction of corporate business in Sacramento County'' but that it maintained ''its office for the transaction of corporate business in San Joaquin County, and its principal officers, executive offices, its books of account and stock records were and are located in said San Joaquin County.'' These findings are supported by the testimony of Elmer J. Walther, attorney for the corporation since 1936. He testified that the place of business of the winery is in San Joaquin County; that all the distilling takes place in that county; that all the officers of the corporation including the president, vice president and secretary, are in San Joaquin County except a director and vice president who live in Fresno County; that there is no office maintained by the corporation in Sacramento County and no officer is in that county; that all the corporate records are kept in San Joaquin County. Appellant contends that the testimony of Walther related to the time of trial rather than at the time the executions were levied. While it is true that the evidence as set forth in the bill of exceptions uses the present tense, when read in its entirety it is obvious that the witness was referring to the period since he became attorney in 1936.

■ From the findings it is clear that we are dealing with a situation where the corporation has designated one county as its principal place of business, and actually, in fact, all of its business is done in another county where most of its officers reside and where it keeps all of its corporate records. There can be no doubt that, generally speaking, a corporation's residence is deemed to be where its principal office or place of business as designated in the articles is located. (13 Am.Jur., p.281, § 148, et seq.) But that rule is not of inevitable application. There are many situations in the law where, for purposes of venue and jurisdiction, a corporation has been held to be present in any county where it conducts its operations. (See annotation 43 L.R.A.(N.S.) 272.) As to foreign corporations, California has held that its stock belonging to a California stockholder may have its situs in this state. In *Wait* v. *Kern River Mining etc. Co.,* 157 Cal. 16 [106 P. 98], the corporation was organized in Arizona, but all of its prop-

erty was in California where it did all of its business. The court recognized the rule that generally the situs of the shares is the state where the corporation is organized, but said that for all practical purposes the shares had their situs in California, and gave specific performance to plaintiff in this state on his contract to purchase. The court thus gave recognition to the practical aspects of the situation, refusing to be bound by the mere paper domicile of the corporation.

It would seem that the statutes above set forth, reasonably interpreted, recognize the practical problem here presented. Stock of a stockholder must be attached or levied upon by attaching or levying upon the corporation. Under section 542 (4), *supra*, an attachment or levy is made by serving certain designated officers. There is nothing said in that section to indicate that the Legislature meant that such service had to be made in the county designated in the articles as the location of the principal office. So far as that section is concerned, service is sufficient if made in any county where any of the designated officers can be found. But section 694, *supra*, requires the execution sale to be had in the county ''where said property or some part thereof is situated . . .'' Read together we think the Legislature intended to provide, and has provided, that corporate stock may be attached where any of the designated officers may be found, and where the corporation carries on a major part of its business. There is nothing incongruous in thus holding that, for the purposes of attachment or execution, shares of stock may have several different situses in the same jurisdiction, such as at the legal domicile and the domicile in fact of the corporation. The obvious purpose of the attachment and execution sections is to make all property, except that excepted, subject to attachment and execution, and to provide that some person is served who has control over the property so that the property may be reached.

Unless it be held that shares may be reached by service on officers at the domicile in fact of the corporation, as well as at the legal domicile, the obvious purpose of the law to make shares of stock subject to the claims of creditors of stockholders will be defeated. Thus, if a domestic corporation in its articles designated Del Norte County as the legal domicile of the company, but in fact transacted all its business in San Diego County, where its officers resided, if appellant's contention is sound, no creditor of a stockholder of that corporation could ever reach that stockholder's stock as long as the officers kept away from Del Norte County. By the mere fictional designa-

tion of a particular county as the legal domicile of the corporation, a corporation could put the shares of its stockholders forever beyond the reach of persons to whom those stockholders owe valid and meritorious obligations. That is not the policy of the law.

From the above quoted statutory provisions, it seems quite clear that the Legislature intended, at least where the corporation carries on no activities and no officer is present at the place designated in the articles as the principal place of business, that a valid attachment or execution may be had in the county where the corporation carries on its activities and a proper officer can be reached to complete the service. The fiction that a corporation has its legal domicile at the place designated in its articles was created to accomplish justice in certain cases, not to defeat justice. When a legal fiction results in an absurdity it should be disregarded. It follows that San Joaquin County was a proper county in which to serve the corporation.

Appellant also contends that, independently of the above point, the evidence does not sustain the findings that the Adams and Propper claims were prior to his. The two claims are based on different facts and will be separately considered. The controversy over whether appellant or Adams is entitled to priority to the 750 shares is based on the following facts:

Appellant recovered judgment against Mathews on October 11, 1938. Execution was levied on the judgment on October 20, 1938, and the execution sale at which appellant purchased, was held November 3, 1938.

Adams claims priority by virtue of an execution levied on July 27, 1938, antedating the levy of appellant. Adams purchased at execution sale held on November 21, 1938, subsequent to the sale to appellant. Appellant urges, however, that Adams' priority does not relate back to the levy of July 27, 1938, but is referable to a levy made by Adams on November 11, 1938.

The bill of exceptions recites that it was stipulated that Adams recovered his judgment against Mathews in December of 1933; that on May 7, 1936, execution issued; that the sheriff levied on 750 shares standing in the name of Mathews. It also appears that on May 25, 1936, one Van Horn and appellant filed with the sheriff of San Joaquin County third party claims to the 750 shares owned by Mathews. Just what the basis of appellant's claim was at that time does not appear.

He had not yet recovered his judgment against Mathews, nor, so far as appears, attached the stock on that date. Pending the hearing of the third party claims, Adams caused successive levies of execution to be made on the stock, the last levy, prior to appellant's levy, being made on July 27, 1938.

On June 25, 1936, appellant, Adams and Van Horn entered into a written stipulation that, pending the final determination of the validity of the third party claims, they would not in any way change the status of such shares. On May 13, 1937, the court in the third party proceeding, made an order restraining all sales of the stock pending the final determination of that action. This order was amended on July 1, 1937, the amended order providing that it did not prevent further levies on property of Mathews.

On September 20, 1938, the court entered judgment in the third party proceeding to the effect that Mathews owned the stock, subject to the lien of the levy of execution of Adams. An appeal taken from that judgment by the third party claimants was abandoned November 9, 1938, by the filing of an abandonment. As a matter of law, the judgment in the third party proceeding was void. Such a proceeding does not lie where either corporate stock or an indebtedness has been attached. (*Bank of America* v. *Riggs,* 39 Cal.App.2d 679 [104 P.2d 125].)

Following entry of judgment in the third party proceeding, Adams caused the sheriff to advertise the 750 shares of stock for sale under the levy of execution of July 27, 1938. Van Horn and appellant immediately had Adams cited for contempt for violating the restraining order, since, by virtue of the appeal, of which Adams claims he had no knowledge, the judgment in the claims proceeding was not final. Adams, thereupon, voluntarily canceled the proposed sheriff's sale, and the writ of execution of July 27, 1938, was returned wholly unsatisfied on September 27, 1938—unsatisfied not because of the fact that no property had been found, but because of the outstanding restraining order, and the voluntary cancellation.

█ As already pointed out, the appeal in the third party proceeding was not abandoned until November 9, 1938. On October 11, 1938, while the restraining order was still apparently in effect, appellant caused a writ of execution to be issued on his judgment against Mathews. It was levied on October 20, 1938, and the execution sale took place on November 3, 1938. Thus, after appellant had caused Adams to can-

cel his proposed sheriff's sale by instituting the contempt proceeding, appellant went ahead, and, in violation of his written stipulation, and in violation of the order in the claims proceeding, caused an execution sale to be had while the appeal was pending.

Adams claims that these facts raise an estoppel against appellant. The latter urges that, although the restraining order was still in effect, the third party proceedings were void, and, therefore, the restraining order did not operate as a valid restraint. But the answer is not so simple. Here appellant stipulated with Adams that, pending the final determination of the third party proceeding, they would not change the status of the shares. Then the court issued a restraining order restraining all sales under execution pending final determination of the third party proceeding. Judgment was entered therein, but appellant here appealed. Adams at that time had clear priority because of his levy of July 27, 1938. In apparent ignorance of the appeal, Adams caused the sheriff to advertise the stock for sale under that levy. Appellant, by contending the restraining order was still in effect, got Adams to cancel the sale, and the execution was returned unsatisfied. Then, while the restraining order was still in effect, appellant levied on the stock and bought at execution sale, and now contends he could thus secure priority over Adams because the third party proceeding was void, and, therefore, the restraining order was void. Thus, appellant relied on the stipulation and order in getting Adams to cancel his execution sale, and then, without notice to Adams, deliberately violated the stipulation and order. Such practice cannot be condoned. Under the facts, appellant would clearly be estopped from claiming priority over Adams, if in fact appellant had such priority.

However, an examination of the pertinent code sections demonstrates that, independently of the doctrine of estoppel, Adams has priority over appellant. It is our opinion that the levy by Adams on July 27, 1938, gave him priority over the levy of appellant of October 20, 1938. The priority of successive executions depends upon the priority of the levies. (§ 688, Code Civ. Proc.) Appellant argues, however, that when Adams' writ of execution of July 27, 1938, was returned wholly unsatisfied, the lien of that execution was terminated, with the result that Adams' priority must depend on the writ issued on November 11, 1938. That is not the law. Section 688 of the Code of Civil Procedure provides that: ''Until a levy, the property is not affected by the ex-

ecution; but no levy shall bind any property for a longer period than one year from the date of the issuance of the execution . . .'' Thus, under this section it is contemplated that the lien of the levy may exist for one year. But section 683 of the Code of Civil Procedure provides that the ''execution may be made returnable, at any time not less than ten nor more than sixty days after its receipt by the officer to whom it is directed, to the court in which the judgment is entered . . .'' The July 27, 1938, levy was returned unsatisfied, not because no property had been subjected to the lien, the execution having been levied on the stock before the return, but only because the property actually levied upon had not been sold, Adams having canceled the sale for reasons already set forth.

 Of course, the return of the writ terminates the sheriff's authority to make a levy, and it generally terminates his authority to make a sale, but that is not an invariable rule. (*Weldon* v. *Rogers*, 157 Cal. 410 [108 P. 266], 15 Cal.Jur. p.1077, § 76.) But that does not mean that the lien of the levy is necessarily lost by the return. Section 683 of the Code of Civil Procedure also provides: ''If an execution is returned unsatisfied, another may be afterwards issued within the time specified in this code.'' Reading the sections together, it seems quite clear that once a levy is made on specific property the lien thereof may last for one year under section 688; under section 683 execution must be made returnable not more than sixty days after receipt by the officer. Obviously, if the execution levy binds the property for a year, such lien must survive, under some circumstances, the return. There would be no reason for providing for the continuance of the lien for one year, if the lien automatically was terminated by a return. Where a levy has been made on specific property, the lien of that levy should not be lost because such execution is returned unsatisfied because of facts over which the execution creditor has no control. Under such circumstances, another writ may be issued during the year, and its priority relates back to the prior levy. This is the only way in which the various code sections can be reconciled, and such interpretation is reasonable and reaches a fair result. If this interpretation be correct, and we think it is, Adams' lien dates from the levy of July 27, 1938, which was prior to the levy of appellant.

The Propper claim to 62½ shares rests on an entirely different basis. This respondent pleaded in his answer that

he purchased the 62½ shares at an execution sale in San Joaquin County on April 7, 1937. The finding is in accord with the allegations. But the bill of exceptions contains no evidence to sustain this finding. The sole evidence contained therein is the following: ''ADOLPH PROPPER, defendant, called as a witness on his own behalf, sworn [sic] and testified as follows: I am in business in Lodi, and Lodi is the place where the Acampo winery is. I got that certificate from the sheriff of San Joaquin County and took it to the secretary of the Acampo Winery at Lodi, and he gave me the certificate 580 for the 62½ shares. I got this second certificate soon after the sale. That was in 1937.''

The parties stipulated that the bill of exceptions ''contains a full, true and correct statement of all evidence introduced'' and the trial judge so certified. It is obvious that such evidence is totally insufficient to support the findings as to the Propper claim. The evidence standing alone is unintelligible. No documentary evidence of title was introduced, nor was oral evidence of title given. If the facts are as set forth in the answer of this respondent, then the Propper claim is entitled to priority, but there is no evidence to support the finding.

The judgment, insofar as it quiets the title of Adams to 750 shares of the Acampo Winery and Distilleries, Incorporated, stock, formerly owned by Mathews, is affirmed; but, insofar as the judgment quiets the title of Propper to 62½ shares of such stock formerly owned by Mathews, the judgment is reversed; respondent Adams to recover his costs on this appeal, appellant Partch and respondent Propper to bear their own costs.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 7, 1942. Curtis, J., and Edmonds, J., voted for a hearing.