[Civ. No. 7136.   Fourth Dist.   Sept. 24, 1963.]

GEORGE RONY, Plaintiff and Respondent, v. YUCCA WATER COMPANY, LTD., et al., Defendants and Appellants.

[Civ. No. 7137.   Fourth Dist.   Sept. 24, 1963.]

CORNELIUS KRAUSNICK, Plaintiff and Appellant, v. GEORGE RONY, Defendant and Respondent.

(Consolidated Cases.)

John Martell, Rinehart, Merriam, Parker & Berg and Jay D. Rinehart for Defendants and Appellants and Plaintiff and Appellant.

Harwood, Heffernan, Soden & Corfman and Robert L. Corfman for Plaintiff and Respondent and Defendant and Respondent.

STONE, J.*—These two actions concerning title to the same 200 shares of corporate stock in Yucca Water Company, Ltd., were consolidated for trial, and separate judgments were entered. Since most of the evidence is relevant to both actions and the governing principles of law are largely applicable to both, the two appeals will be treated in a single opinion.

At the occurrence of the events out of which these cases arise, there were 600 shares of capital stock of Yucca Water Company, Ltd., outstanding, and they were owned 200 shares by Jurling, president, 200 shares by Storey, secretary, and 200 shares by Al Anderson. A creditor caused execution to be levied upon Anderson's 200 shares by serving a writ of execution upon Jurling, president of the corporation, in Los Angeles County. At a subsequent execution sale, respondent Rony bought the shares for the sum of $6,000.

Rony presented the sheriff's certificate of sale to Storey, secretary and transfer agent of the corporation, with a

*Assigned by Chairman of Judicial Council.

demand for a new certificate. However, the sheriff, at the time of levy of execution did not take physical possession of certificate No. 4 evidencing Anderson's title to the 200 shares. In the absence of the certificate, Storey quite properly refused to record the change of ownership on the corporation's books and issue a new certificate to Rony.

The writ of execution was levied upon Jurling, as president of the corporation, on December 31, 1958. On December 29, 1958, Al Anderson executed a bill of sale purporting to transfer title to the same shares to appellant Krausnick. However, Anderson did not endorse and deliver the stock certificate to Krausnick until more than a year after the purported transfer by bill of sale. The stock certificate was presented to Storey with a request to transfer, several months after Rony had presented his sheriff's certificate of sale requesting a transfer. Storey refused to transfer the stock to either Rony or Krausnick.

Rony filed an action in Orange County against the corporation and against Storey as secretary, requesting a decree requiring the defendants to cancel certificate No. 4 previously issued to Anderson, and issue a new certificate to him for the 200 shares. In his complaint Rony predicated his title upon the execution sale in Los Angeles County, the sheriff's certificate of sale of personal property, and his demand upon the corporation for a new certificate for 200 shares of capital, common stock of Yucca Water Company, Ltd., pursuant to the certificate of sale. Storey and the corporation answered, and by way of defense alleged the purported transfer from Anderson to Krausnick by bill of sale two days prior to the levy of execution. They also pleaded as an affirmative defense that the levy of execution and subsequent sale in Los Angeles County were void in that the corporation carried on its business in San Bernardino County and maintained its principal place of business in Orange County. It was alleged, also, that the levy and sale constituted a fraud upon Storey as stockholder, as well as a fraud upon the corporation, for the reason that Jurling, as president, arranged to have execution served upon him in Los Angeles County to prevent Storey and the corporation from gaining knowledge of the pending execution sale. Further, it was alleged that Rony was acting as the servant, agent and employee of Jurling and that Jurling wrongfully acquired the stock by using Rony as "a dummy" in the transaction.

Shortly thereafter Krausnick filed an action in Los Ange-

les County against Rony, Storey and the corporation, to quiet title to the 200 shares of stock. The action was transferred to Orange County, dismissed as to the corporation and Storey, and consolidated for trial with the Rony case.

The first major issue is whether the execution sale in Los Angeles County was valid, because if it was not respondent is out of court as to both cases.

▪ Appellants contend that the stock owned by Anderson could not be levied upon in Los Angeles County because it was neither the county where the physical assets of the corporation were located and collections were made for water sold, which was San Bernardino County, nor the county designated in the bylaws as the principal place of business of the corporation, that being Orange County in which the secretary lived. Certain of the corporation's books were kept by the secretary in his real estate office.

Respondent asserts that the levy in Los Angeles County was proper because the president, who testified that he was also general manager of the corporation, resided in that county, and he carried on the following activities on behalf of the corporation in Los Angeles County: purchased commodities, particularly pumps and pump supplies, performed engineering for the water system, obtained insurance, and paid certain operating expenses. He also received weekly reports from the corporation's agent-collector in San Bernardino, from which he prepared reports for various government agencies, including the Public Utilities Commission, and did a number of other things of a minor nature.

▪ The landmark case on the subject is *Partch* v. *Adams*, 55 Cal.App.2d 1 [130 P.2d 244]. In that case the court delineated the principles which govern a determination of the proper situs for an attachment or a levy upon corporate stock. We quote the following language from page 7, which is controlling here:

"Stock of a stockholder must be attached or levied upon by attaching or levying upon the corporation. Under section 542, subdivision 4, *supra* [Code Civ. Proc.], an attachment or levy is made by serving certain designated officers. There is nothing said in that section to indicate that the Legislature meant that such service had to be made in the county designated in the articles as the location of the principal office. So far as that section is concerned, service is sufficient if made in any county where any of the designated officers can be found. But section 694, *supra* [Code Civ. Proc.], requires the

execution sale to be had in the county 'where said property or some part thereof is situated. . . .' Read together we think the Legislature intended to provide, and has provided, that corporate stock may be attached where any of the designated officers may be found, and where the corporation carries on a major part of its business. There is nothing incongruous in thus holding that, for the purposes of attachment or execution, shares of stock may have several different situses in the same jurisdiction, such as at the legal domicile and the domicile in fact of the corporation.''

Thus the question of the validity of the execution sale in Los Angeles County is reduced to a question of fact: Were the activities in Los Angeles County performed by Jurling as president of the corporation sufficient to make that county a proper situs for levy of execution pursuant to the language of *Partch*, that ''corporate stock may be attached where any of the designated officers may be found, and where the corporation carries on a major part of its business''?

As we view the testimony relating the activities of Jurling, heretofore summarized, it constitutes substantial evidence in support of the finding of the trial court. It is axiomatic that the evidence must be viewed in the light most favorable to respondent and that all intendments and reasonable inferences must be indulged which favor sustaining the finding of the trial court. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].) This rule applies to the finding that through Jurling's activities the corporation was present in Los Angeles County for the purpose of levy of writ of execution. As a reviewing court we are not free to weigh the conflicts in the evidence pointed out by appellants. (*Berger* v. *Steiner*, 72 Cal.App.2d 208 [164 P.2d 559] ; *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

One other important aspect of the *Partch* opinion which is pertinent to our case is the observation that:

''Under section 699 of the Code of Civil Procedure it is not necessary for the sheriff to take physical possession of the certificates in order to hold a valid sale on execution of the shares.'' (P. 5.)

Although *Partch* v. *Adams, supra,* was decided in 1942, and amendments have since been made to the code sections cited therein, none has affected the basic rule that it is unnecessary for the sheriff to take physical possession of the certificates. In regard to this question the Supreme Court recently said, in *Reynolds* v. *Reynolds*, 54 Cal.2d 669, at page 682 [7 Cal.Rptr. 737, 355 P.2d 481] :

"Since California did not adopt the first sentence of section 13 [Uniform Stock Transfer Act], our law with respect to attachment or levy upon shares of stock remains as before, and accordingly it is not necessary that the certificates be actually seized by the officer making the attachment or levy. (Code Civ. Proc., § 542; *Partch* v. *Adams,* 55 Cal.App.2d 1, 5 [2] [130 P.2d 244].)"

In view of the holding in the *Partch* and *Reynolds* cases, the sheriff complied with the mechanics of the law in levying the writ of execution upon Anderson's shares of stock by service upon Jurling, the president, in Los Angeles County, even though the officer did not take possession of the stock certificate.

To conclude that there was a valid execution sale does not completely dispose of the question whether Rony, as execution purchaser, secured title to the shares of stock. *Reynolds* v. *Reynolds, supra,* holds that (p. 683):

"There is nothing in the law which entitles the purchaser at a valid execution sale to the issuance of a new certificate without the surrender of the outstanding certificate. The rule is stated in Ballantine & Sterling, California Corporation Laws (1949 ed.) section 244, page 312, as follows: ''A certificate of sale from the sheriff will convey the right of the debtor, but will no longer entitle the execution purchaser to a new certificate for shares from the corporation until the old certificate is surrendered to the corporation . . . .'

"In the rule which it adopted relating to the specific matter of the issuance of new certificates, the Legislature pointedly did *not* make any exception for execution purchasers. The obvious reason is that new certificates, since the adoption of the Uniform Stock Transfer Act in California, represent *title in rem,* while under the attachment and execution statutes there can be a conveyance of only the debtor's right, title and interest—a quitclaim."

Therefore the sheriff's certificate of sale vested in Rony no better title than Anderson had at the time of the execution sale. To use the language of *Reynolds,* the certificate amounts to a quitclaim. It follows that if Anderson, the judgment debtor-stockholder, made a bona fide transfer of the stock prior to the execution sale, the transferee must prevail over the purchaser at execution sale. Appellants contend that Krausnick was a bona fide purchaser, and that Anderson transferred his interest in the stock to Krausnick by bill of sale dated two days prior to the date of the execution sale.

The stock certificate, however, was not delivered to Krausnick until over a year after the bill of sale is alleged to have been executed, and many months after the execution sale was completed.

■ The trial court found that the purported transfer from Anderson to Krausnick was "invalid, ineffective, and fraudulent as to the attaching creditor of said Al Anderson, to wit, Timothy Alvarado by his Guardian Ad Litem Raymond L. Alvarado, Jr., and the successor in interest of said attaching creditor, to wit, defendant herein, George Rony." Appellants contend that there is no evidence of a substantial nature in the record to support this finding. Krausnick and Anderson testified that consideration for the transfer was a $25,000 credit upon an indebtedness of approximately $160,000 owed Krausnick by Anderson. The testimony of both men concerning their complex and largely oral financial and business transactions, is far from convincing. Clearly, the trial court gave little credence to their testimony insofar as it related to the purported transfer of Anderson's shares of stock to Krausnick two days before the execution sale. Having in mind that the trial judge is the arbiter of the credibility of the witnesses (*La Jolla Casa de Manana* v. *Hopkins,* 98 Cal.App.2d 339, 346 [219 P.2d 871]), we cannot say that the trial court erred in finding invalid the attempted transfer of stock from Anderson to Krausnick.

The finding is bolstered by Anderson's failure to endorse the certificate and deliver it to Krausnick, or to execute an assignment and deliver it to Krausnick with the certificate, as required by Corporations Code section 2466 which governs a transfer of title to shares of stock.

■ Next, appellants argue that the trial court erred in permitting respondent to attack the validity of the transfer between Anderson and Krausnick because Rony did not specifically plead fraud. However, appellants Storey and the corporation raised the issue in the Rony quiet title action by pleading the Krausnick transfer as an affirmative defense, while appellant Krausnick placed the validity of his title in issue by filing his quiet title action against Rony.

The joint pretrial statement signed by counsel for Krausnick and for Rony, specified as an issue " (c) the validity of the alleged transfer of the stock to Krausnick from one Al Anderson, the former owner." The pretrial order adopted the joint pretrial statement of the issues. ■ Furthermore, it has long been the rule in California that "a defendant under

a general denial may raise the issue that the plaintiff acquired title in whole or in part through a fraudulent transfer affecting [his] claim of title thereto.'' (*Sellers* v. *Neil*, 47 Cal. App.2d 128, 131 [117 P.2d 390]. See also *Strong* v. *Strong*, 22 Cal.2d 540, 546 [140 P.2d 386] ; *Grum* v. *Barney*, 55 Cal. 254, 255.)

At the trial, counsel for respondent contended that neither Storey nor the corporation, as defendants in the quiet title action, could affirmatively attack the validity of the execution sale for lack of privity between them and the parties to that transaction. Storey was permitted to testify as to this issue over the objection of counsel for respondent, who, at the conclusion of the trial, moved to strike such testimony. The record does not reflect that the motion was granted, but in an appendix to their opening brief appellants Storey and the corporation quote a letter written by the trial judge indicating that the motion to strike was granted. The letter is not a part of the record, however, and no order granting the motion to strike is to be found in the record. We have, therefore, reviewed the record in its entirety, including Storey's testimony.

Storey testified that he had offered Anderson $39,500 for the stock, which indicates that Anderson lost considerable credit on the $130,000 judgment, since the execution sale was for $6,000. Yet, it was Anderson, not Storey, who sustained the loss; Storey is in no position to raise the issue on behalf of Anderson, who has not complained.

On behalf of the corporation, Storey testified that Jurling, the president, manipulated the execution sale using Rony as a ''front'' in order to get control of the corporation. The substance of the contentions is that Jurling was able to buy the stock which Storey unsuccessfully tried to buy. It isn't made clear why Jurling's purchase of the 200 shares would be a fraud upon the corporation simply because he already owned 200 shares, while it would have been perfectly legitimate for Storey to buy the same 200 shares although he, like Jurling, already owned 200 shares.

In any event, the question is settled by the trial court's finding on the issue. Rony testified that he purchased the stock for himself as a business venture, and not as an agent or front for Jurling. The court apparently believed him, and found this to be a fact. Rony's testimony alone is substantial evidence sufficient to support the finding. (*Johnson* v. *Servaes*, 210 Cal.App.2d 392, 402 [26 Cal.Rptr. 733].)

622

Finally, we reach the part of the judgment ordering the corporation to issue respondent a certificate for 200 shares of stock. Appellants again rely on *Reynolds* v. *Reynolds, supra,* which held that the corporation could not be ordered to issue a new certificate without surrender of the old one or proof that the certificate was lost or destroyed. The two cases are not apposite. In *Reynolds* there was no certificate available to be cancelled by court order as the defendant Reynolds, who had the certificate in his possession, was beyond reach of the court. Hence the outstanding certificates could not be surrendered to the corporation in accordance with the requirements of section 2477 of the Corporations Code. Here, the certificate is not in the possession of Anderson, the judgment debtor, nor in the possession of Krausnick, who claims title through an abortive transfer. It is in the possession of Storey, the secretary and transfer agent of the corporation, and there is nothing to prevent its cancellation pursuant to court order. A new certificate can issue without jeopardizing the rights of bona fide purchasers and without subjecting the corporation to liability.

The judgment in each case in favor of respondent Rony is affirmed.

Griffin, P. J., and Coughlin, J., concurred.