[S. F. No. 15566.   In Bank.—December 23, 1936.]

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (a Corporation), Respondent, v. CHARLES G. JOHNSON, State Treasurer, etc., Appellant.

U. S. Webb, Attorney-General, Neil Cunningham, and James J. Arditto, Deputies Attorney-General, for Appellant.

Livingston & Livingston for Respondent.

Chickering & Gregory, Myrick & Deering and Scott, Pillsbury, Madison & Sutro, Knight, Boland & Riordan and John H. Riordan as *Amici Curiae* on Behalf of Respondent.

THE COURT.—The plaintiff sued the defendant state treasurer for the sum of $4,325.87, as a portion of the tax assessed against it in the year 1934 by the state board of equalization under the provisions of section 14 of article XIII of the Constitution and paid under protest. Judgment was entered for the plaintiff and the defendant appealed. The cause is presented on an agreed statement of facts.

The plaintiff is an insurance company doing business in this state. As such it is and was at the time herein involved required by the provisions of section 14 of article XIII of the Constitution to pay a tax measured by a percentage of the gross premiums received from business done in this state. The section also provides that there shall be deducted from the amount of such tax the amount of taxes "paid by such companies on real estate owned by them in this state".

In 1934 the state board of equalization levied against the plaintiff a state tax of $74,425.40 computed by the percentage of its gross premiums received during the calendar year 1933. That tax became due and payable on the first Monday in July, 1934, and the plaintiff paid the same in two installments. Of said tax, however, the plaintiff duly protested payment of the sum of $4,325.87 on the ground that said sum represented taxes paid by it on real estate owned by it in this state, and was therefore deductible from the state tax. The state board refused to allow the deduction. The defendant treasurer resists recovery on the ground that the real property involved was acquired by the plaintiff subsequent to the date when said taxes became a lien.

In May, 1932, the plaintiff recovered a judgment in a foreclosure action against Continental Buildings Company, which had been the owner of said property. Pursuant to that judgment and on June 21, 1932, the real estate was sold to the plaintiff as the highest bidder and a certificate of sale was issued to it. No redemption was made and on June 22, 1933, the commissioner's deed was executed and delivered to the plaintiff as the purchaser, and duly recorded. County and municipal taxes in the total sum of $8,651.74 had become

a lien on said property in March, 1933. The plaintiff paid the first installment thereof, or the sum of $4,325.87 on November 28, 1933. In March, 1933, the property appeared on the assessment rolls in the name of Continental Buildings Company. No contention is made that the plaintiff could not lawfully own said property pursuant to the provisions of section 415 of the Civil Code.

It is at once seen that although the property stood of record in the name of the prior owner at the time the tax became a lien, nevertheless the plaintiff was then the owner of the legal title subject to defeasance only if the mortgagor exercised its equity of redemption. The plaintiff therefore insists that in any event this court should so find and affirm the judgment on the ground that the plaintiff was the owner of the property at that time. It is not necessary to pursue that course, even if proper, in view of our opinion as to the effect of the pertinent constitutional provision.

■ The language of section 14 of article XIII must be applied in accordance with its plain and unambiguous meaning, viz., that there shall be deducted from the state tax the amount of taxes paid by the company on real property owned by it in this state—obviously owned by it at the time of the payment of such real property taxes.

■ The defendant contends that the tax on gross premiums is not an "in lieu" tax, because real property taxes are required to be paid; therefore, it is argued, the offset or deduction is in the nature of an exemption and the language creating it must be strictly construed against the taxpayer, citing 2 Lewis' Sutherland on Statutory Construction, section 539; *Cypress Lawn Cemetery Assn.* v. *San Francisco,* 211 Cal. 387 [295 Pac. 813], and other cases. In support of his contention that the right to the deduction must be determinable at the date of the lien of the real property tax attaches, the defendant also relies on cases holding that the taxable status of property in this state is fixed as of the first Monday in March. (See *East Bay Municipal U. Dist.* v. *Garrison,* 191 Cal. 680, 692, 693 [218 Pac. 43]; *Dodge* v. *Nevada Nat. Bank,* 109 Fed. 726, 731.) In other words, it is contended that in order to be entitled to an exemption the taxpayer must have owned the property on the date the tax became a lien.

A complete answer to this line of argument is that the proviso does not create an exemption. It permits an offset or deduction. The best proof that an exemption is not created is that the taxes are required to be paid. The cases relied upon therefore do not apply. This court has heretofore discussed at length the nature of the tax for state purposes imposed by section 14 of article XIII of the Constitution. The provision imposing a gross receipts tax on persons and corporations engaged in specified callings, including subsection (b) imposing a gross premiums tax on insurance companies, was adopted on November 8, 1910. The gross premiums tax imposed on insurance companies was retained and increased when the section was amended on June 27, 1933, to substitute for the former gross receipts tax an *ad valorem* tax and (by section 16) permitting the imposition of a franchise tax as an additional tax. The decisions of this court defining the nature and purpose of the gross receipts and gross premiums tax provided by section 14 of article XIII since its adoption are therefore still applicable wherever they are pertinent in so far as insurance companies are concerned. The section provides that the gross premiums tax shall be in lieu of all other taxes and licenses, state, county and municipal, upon such companies or their property, except taxes upon their real estate. As hereinbefore noted, the same section provides that there shall be deducted from the tax on gross premiums the amount of any taxes paid by such companies upon real property owned by them in this state.

The purpose in the adoption of section 14 of article XIII, and this general purpose still obtains, was "to divide the subjects of state and local taxation by imposing upon persons and corporations engaged in certain callings . . . the obligation to pay certain taxes to be applied exclusively to state purposes. At the same time the persons engaged and the property employed in these callings were, to a greater or less degree to be free from the burden of local taxation". (*San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244, 247 [135 Pac. 971].) In that case, at page 248, answering the contention of the appellant that the section created an exemption and was to be strictly construed against the taxpayer, the court stated: "But we think the amendment does not grant any exemption within the meaning of this rule. As

we have pointed out, it provides a specific mode of taxation, in substitution of certain other modes.'' (*San Bernardino v. State Board of Equalization*, 172 Cal. 76 [155 Pac. 458]; *Southern Cal. Tel. Co.* v. *County of Los Angeles*, 212 Cal. 121 [298 Pac. 9].)

The distinction, if there was any in reality, between the gross receipts tax previously imposed by section 14 of article XIII upon specified public utilities, and the gross premiums tax on insurance companies imposed by the same section and continued in effect, is pointed out in *Consolidated Title Securities Co.* v. *Hopkins*, 1 Cal. (2d) 414 [35 Pac. (2d) 320]. The gross receipts tax was considered as a different method of computing a tax on property, by using the gross receipts as a fair measure of estimating the value of operative property; while the gross premiums tax was termed an excise tax in the nature of a franchise tax exacted for the privilege of doing business in the state. In that case it was recognized that while the gross premiums tax was not directly in lieu of real property taxes as well as other taxes and licenses, it was nevertheless indirectly such an ''in lieu'' tax, because the section by virtue of the deduction of real property taxes from the tax imposed contemplated that the percentage of the gross premiums tax should be the full measure of the tax burden upon the insurance company.

In the absence of language (and there is none) in the constitutional section which would expressly impose the requirement of ownership of the property at the time the taxes on real estate become a lien before the deduction could be claimed, we have no hesitancy in declaring that the time when the offset is to be effective is the time of payment of the current real estate tax. The division of the subjects of taxation for state and local purposes under the plan of the constitutional section has less to do with when the real property tax becomes a lien than it has with the separation of the subjects of taxation and the allocation of the so-called ''in lieu'' tax. It becomes obvious therefore that the case of *Helvering* v. *Missouri State Life Ins. Co.*, 78 Fed. (2d) 778, 781, and the board of tax appeals decisions therein cited, relied upon by the defendant, which hold that ownership at the time the lien attached was essential, are not controlling here. In that case the court was concerned with determining whether the taxpayer should be allowed to

deduct from its *gross income* the taxes paid upon real property, for the purpose of determining the net income subject to the tax there involved. In that case also the property was acquired by the taxpayer after the taxes became a lien. However, considerations whether payment of such real property taxes was a part of the capital expenditures for the acquisition of the property or represented deductible investment costs, which are important and necessary considerations in determining net income, have no necessary bearing on the determination whether under the section here involved the taxpayer is entitled to an offset or deduction on the tax imposed. More nearly in point is the case of *Northwestern Ice & Cold Storage Co.* v. *Galloway*, 151 Or. 260 [49 Pac. (2d) 359], wherein a provision permitting as an offset against the amount of an excise tax the amount of taxes paid upon the taxpayer's personal property located in the state was considered. But the question presented here was not determined. The contention answered in the negative in that decision was whether the word "paid" could be interpreted to mean "accrued".

The defendant contends that a decision in conformity with the plaintiff's contention will result in permitting as deductions from the gross premiums tax the delinquent taxes paid by the taxpayer which became a lien in years previous to the taxable year either while the property was in the ownership of the taxpayer or in the ownership of another. That question does not confront us now. There is nothing stated herein which would prevent a decision to the effect that in the constitutional plan of a division of subjects of taxation, or the allocation of taxes paid, it was not intended to reduce the amount of the gross premiums tax by any sum in excess of current real property taxes paid by the insurance companies. That question is still open for consideration when it is presented in an appropriate case.

■ We conclude that there is nothing in the Constitution which would prevent the offset of current real estate taxes paid by the insurance company on property owned by it at the time of payment thereof, although in another's ownership at the time the tax became a lien, and that the reason and purpose of the law as now framed permits and requires such deduction.

The evidence of any departmental construction, assuming its pertinence, contrary to the conclusion stated is insufficient to justify a different conclusion.

The judgment is affirmed.