[S. F. No. 16479.   In Bank.—January 6, 1941.]

A. CAMINETTI, Jr., as Insurance Commissioner, etc., Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Earl Warren, Attorney-General, W. T. Sweigert, Assistant Attorney-General, and Neil Cunningham, John L. Nourse and James A. Arnerich, Deputies Attorney-General, for Petitioner.

John H. Riordan and Knight, Boland and Riordan for Respondent.

THE COURT.—In this original proceeding in prohibition the petitioner, as Insurance Commissioner of the state, seeks to restrain the respondent Superior Court in and for the City and County of San Francisco from proceeding with the hearing and determination of a cause now pending before it.

An alternative writ of prohibition was issued by this court upon a petition alleging that on August 15, 1940, the petitioner, as Insurance Commissioner, caused to be filed with the respondent Superior Court, pursuant to section 1011 of the Insurance Code, an application for order appointing him conservator of the Mount Moriah Life Insurance Company, a California corporation having its principal office and place of business in San Francisco; that on the same day, and pursuant to such request, the respondent court made its order appointing petitioner conservator, vesting in him as such title to all of the assets of the company and directing him to take possession of its books, records and property with a view to conducting the business until the further order of the court, to the exclusion of the officers and agents of the company, who were thus precluded from interfering with his activities as conservator; that thereupon petitioner immediately took possession of the company's assets and records as conservator and on the same day removed the principal office of the company to the city of Los Angeles, under the provisions of section 1040 of the Insurance Code; that on the following

day, petitioner made application, under that section, for an order transferring the conservatorship proceeding to the Superior Court in and for Los Angeles County; that respondent Superior Court refused to make such order of transfer but instead, and upon the application of the company, purported to restrain petitioner from removing the principal office of the company from San Francisco to Los Angeles; that respondent thereupon purported to assume jurisdiction and to proceed with the hearing of the company's petition, under section 1012 of the Insurance Code, to terminate the conservatorship proceeding even though it is without jurisdiction other than to transfer the conservatorship proceeding to Los Angeles County.

In defense of its action, the respondent court sets forth in its return and brief in support thereof the contention that it cannot lawfully transfer the conservatorship proceeding to Los Angeles or refrain from hearing the application to terminate the same. The validity of this defense depends upon the proper interpretation of several sections of the Insurance Code.

Section 1011 provides that "The Superior Court of the county in which is located the principal office of such person [includes corporation, sec. 19] in this State shall, upon the filing by the commissioner of the verified application showing any of the following conditions hereinafter enumerated to exist, issue its order vesting title to all of the assets of such [corporation], wheresoever situated, in the commissioner . . . and direct the commissioner forthwith to take possession of all its books, records, property, real and personal, and assets, and to conduct, as conservator, the business of said [corporation], or so much thereof as to the commissioner may seem appropriate, and enjoining said [corporation] and its officers, . . . from the transaction of its business or disposition of its property until the further order of said court: . . . [then follow ten enumerated grounds warranting an order of conservatorship]."

Section 1012 provides that "Said order shall continue in force and effect until, on the application either of the commissioner or of such [corporation], it shall, after a full hearing, appear to said court that the ground for said order directing the commissioner to take title and possession does not exist or has been removed and that said [corporation] can properly

resume title and possession of its property and the conduct of its business''.

Section 1040 provides that ''At any time after an order is made under sections 1011 [conservatorship] or 1016 [liquidation], the commissioner may remove the principal office of the [corporation] proceeded against to the city and county of San Francisco or to the city of Los Angeles. In event of such removal, the court wherein the proceeding was commenced shall, upon the application of the commissioner, direct its clerk to transmit all of the papers filed therein with such clerk to the clerk of the City and County of San Francisco or of the county of Los Angeles as the case may require. The proceeding shall thereafter be conducted in the same manner as though it had been commenced in the county to which it had been transferred.''

■    The issues in this case reduce themselves to one of statutory construction. In enacting the Insurance Code the legislature exercised its power to regulate a business peculiarly charged with a public interest. (*Carpenter* v. *Pacific Mutual L. Ins. Co.,* 10 Cal. (2d) 307, 329 [74 Pac. (2d) 761]; *German Alliance Ins. Co.* v. *Hale,* 219 U. S. 307, 316 [31 Sup. Ct. 246, 55 L. Ed. 229]; *In re Bean,* 207 App. Div. 276 [201 N. Y. Supp. 827, 828].) In this light the several sections in question must be considered together and not as unrelated provisions.

■    The respondent court urges that the commissioner, as conservator, having invoked section 1040, must conform thereto in every particular. That section states that the commissioner, once he is appointed conservator, ''may remove the principal office'' of the company proceeded against to San Francisco or Los Angeles, in which event the court where the proceeding was begun ''shall'' upon application of the conservator order a transfer of the proceeding and papers to the city chosen. Section 16 of the Insurance Code declares that as used therein the word ''shall'' is mandatory unless otherwise apparent from the context. There is nothing in the context of section 1040 to indicate that the word ''shall'' therein is other than mandatory. Upon removal of the principal office of the company to either city, the court wherein the proceeding was commenced must accordingly transfer the proceeding upon application therefor.

In the view of the respondent court the section "clearly contemplates . . . an actual or substantial removal of the principal office of the insurer proceeded against; . . . the word 'remove' in connection with the principal office of an insurance company contemplates the moving or removing of substantially all the physical things and equipment, especially the business records of the company and also the business activities theretofore conducted thereat". Whatever the meaning of the word "remove" in other situations, such a construction falls wide of the legislative intent with respect to conservatorship proceedings. Not only does it confuse the phrase "principal office" with that of "principal place of business", between which there is often a clear distinction (*Watters* v. *Hamilton Gas Co.*, 10 Fed. Supp. 323, 326; *Peters* v. *Detroit & C. Nav. Co.*, 24 Fed. (2d) 454, 455; *Wicecarver* v. *Mercantile T. M. Ins. Co.*, 137 Mo. App. 247 [117 S. W. 698, 700]; *Mason & Hanger Co.* v. *Sharon*, 231 Fed. 861, 863 [146 C. C. A. 57]; Fletcher, Cyclopedia Corporations, secs. 4373 and 4651) but it runs counter to the very purpose of a conservatorship proceeding. Such a proceeding contemplates, not the liquidation of the company involved, but a conservation of the assets and business of the company over the period of stress by the commissioner who thereafter yields the control and direction to the regular officers of the company. It is difficult to believe that the legislature intended that for the duration of a temporary control by the commissioner there should be a complete removal of books, assets and business which would tend to dissipate and ruin the business of a company subjected thereto. The principal purpose underlying the provision for removal of the principal office of the involved insurer either to San Francisco or Los Angeles and the consequent removal of the conservatorship proceeding thereto, is unquestionably the convenience of the commissioner who, as such, maintains an office and staff in both cities. Venue statutes enacted for the convenience and assistance of public officials in the discharge of their duties are not unusual. (*State of Cal.* v. *Superior Court,* 14 Cal. App. (2d) 718, 721 [58 Pac. (2d) 1322]; 67 C. J. 77, sec. 122.) The matter rests with the legislature and not with the courts. Under the unqualified language of section 1040 the removal of the principal office of an insurance company to the places designated lies in the discretion of the con-

servator and, in our opinion, any official act or statement of his indicative of such removal is adequate. It appears in the present case that the conservator removed the Minute Books of the company to Los Angeles in effective compliance with his prior written declaration of removal of the "principal office" of the Mount Moriah Life Insurance Company from San Francisco to Los Angeles. By affidavit it appears that the transfer of other books and records of the company was impossible because of the auditing thereof by Examiners. Then, too, the restraining order issued by the respondent court intervened. Given the purpose of the statute, there is a sufficient showing of removal of the principal office within the legislative meaning to require the respondent court to transfer the conservatorship proceeding under the mandatory language of the statute.

The rehabilitation sections of our Insurance Code trace their origin to the New York statute whose history is pertinent. That statute originally provided that after commencement of a rehabilitation or conservatorship proceeding in the judicial district in which the involved company had its "principal office" (sec. 408), the superintendent of insurance "may remove the principal office of the insurer to the county of Albany" in the event of which removal "the court shall upon the application of the superintendent, direct the clerk of the county wherein such proceeding was commenced, to transmit all of the papers filed therein with such clerk to the clerk of the county of Albany and the proceeding shall thereafter be conducted in the same manner as though it had been commenced in the county of Albany". (Chap. 30, sec. 412, Cahill's Consol. Laws of New York, 1931–1935.) For all practical purposes, this provision and section 1040 here in issue are alike. As thereafter amended, however, the New York statute declared that "Any time after the commencement of a proceeding . . . the superintendent may apply *ex parte* to the court . . . for an order changing the venue of, and removing the proceeding to Albany county, *or, in the discretion of the superintendent, to any other county of this state in which he deems that such proceeding may be most economically and efficiently conducted*. Upon the filing of any such application for removal, the court . . . *shall* direct the clerk of the county wherein such proceeding is then pending to transmit all of the papers filed therein with such clerk

to the clerk of the county to which such proceeding is removed, and the proceeding shall thereafter be conducted in such other county as though it had been commenced in such county." (Art. 16, sec. 530, Cahill's Consol. Laws of New York, 1939 and 1940 Supps.) (Italics added.)

This transition of the parent statute from one contemplating the removal of the "principal office" of the insurer to Albany County followed by a transfer of the proceeding to that county, to one permitting the transfer of the proceeding to *any* county "in the discretion of the superintendent" (without any necessity for the prior removal thereto of the principal office of the company involved) strengthens the belief that the transfer of such a rehabilitation proceeding is intended to facilitate the work of the conservator. The complete removal of the principal office and business of the company to another city might not only handicap his work, but frustrate the whole purpose of the rehabilitation proceeding.

The respondent court also urges that before a removal and transfer may be effected the hearing contemplated by section 1012, to determine whether "the ground for said order directing the commissioner to take title and possession does not exist or has been removed", must occur in the county wherein the proceeding was commenced and the conservator appointed. This point is grounded principally upon the language "said court" appearing in section 1012. Such a construction would actually serve to nullify the provision in section 1040 which declares that after removal of the principal office to either county and the consequent transfer of the cause thereto, "The proceeding shall thereafter be conducted in the same manner as though it had been commenced in the county to which it had been transferred". When the relevant sections of the Code are read in relation to one another, it is clear that the phrase "said court" in section 1012 refers to the court in which the proceeding was commenced only when there is no removal or transfer as contemplated in section 1040. Otherwise it applies to the court of transfer which under the positive language of section 1040 shall then conduct "the proceeding . . . in the same manner as though it had been commenced in the county to which it had been transferred". Any other construction would violate the plain language and intention of the legislature. Moreover, to restrict under all circumstances the meaning of the words "said court" ap-

pearing in section 1012 so as to confine the hearing provided for in that section to the court wherein the proceeding had its inception, would be to nullify in many instances the right of the conservator under section 1040 to remove *"at any time"* after his appointment the insurer's principal office and then to apply for a transfer of the proceeding to one of the two places designated in the latter section. ■ The statute requires only that the commissioner, as conservator, make application to the court for an order directing the clerk to transfer the proceeding. Such action is purely procedural and has no bearing on due process. Due process is afforded by the hearing authorized in section 1012, which can as well be had in the Superior Court to which the proceeding is transferred.

■ The respondent court contends further that the removal provision of section 1040 was intended to permit removal of the principal office of a company and transfer of a rehabilitation proceeding "to" but not "from" San Francisco. In brief, it urges that such transfer may be made from any county *to* either San Francisco or Los Angeles, the places designated in the statute, but that such transfer may not be made *from* one of said designated places to the other. This contention, far from being borne out by the history of the statute, seems actually to be precluded thereby.

The Liquidation Act, as originally enacted (Stats. 1919, p. 268) provided in section 12 that at any time after commencement of a proceeding thereunder the commissioner might remove the principal office of the company involved "to the city and county of San Francisco". At that time, the only office maintained by the commissioner was located in San Francisco by virtue of statutory requirement. (Sec. 592, Pol. Code.) This section was amended in 1927 by adding thereto "and shall also keep an office in the City of Sacramento". In 1935 it was codified and became section 12905 of the Insurance Code, at which time there was added thereto "and an office in the City of Los Angeles". In conformity with such amendment, the legislature amended the 1919 Liquidation Act and incorporated it in the Insurance Code as section 1040. Since 1935, therefore, the section has required the commissioner to maintain offices in San Francisco, Sacramento and Los Angeles. When the several sections of the Insurance Code are read as a whole, it is clear that they pro-

vide that while a conservatorship proceeding must be commenced in the county wherein the insurer has its principal office (sec. 1011), the conservator may remove at any time after his appointment such principal office "to the City and County of San Francisco or to the City of Los Angeles" and that the court "shall", upon application, then order the proceeding transferred to San Francisco or Los Angeles as the case may be (sec. 1040, *supra*). This provision is clear and unqualified. The absence of any qualifying phrase compels the construction that regardless of where the proceeding is commenced it lies within the discretion of the commissioner, as conservator, to remove the principal office of the insurer to either of the two cities designated in the statute and to petition the court for a transfer of the proceeding to conform thereto. It appears in the commissioner's brief "that the main office of the Bureau of Liquidation has been located . . . in the City of Los Angeles for a number of years and that the said H. A. Benjamin is in charge thereof with a trained staff of personnel experienced and qualified in the handling of all matters appertaining to insurance companies taken over under conservatorship or placed in liquidation; that it is the [Commissioner's] judgment that the conservatorship in all said proceedings can best be handled in the office of the Bureau of Liquidations . . . in the City of Los Angeles." The inconvenience to a San Francisco or Los Angeles company which may result from a transfer of the proceeding to the other county can be no greater than that to a company in the northernmost county of the state resulting from the transfer to Los Angeles County of a like proceeding or the inconvenience to a company in the southernmost county of the state resulting from a transfer to San Francisco. Nowhere in the statute do we find a qualifying phrase to the effect that all proceedings commenced in the northern part of the state can be transferred only to San Francisco while those arising in the southern part of the state can be transferred only to Los Angeles. Likewise there is no qualifying phrase that proceedings commenced either in San Francisco or Los Angeles may not be transferred to the other.

Throughout the proceeding in the respondent court the commissioner repeatedly sought to establish a lack of jurisdiction in the respondent court to proceed after his removal of the principal office of the insurer and his application

for a transfer of the proceeding to comply therewith. At no time did he waive the right to claim a lack of jurisdiction in the court. ■ In any event he has the right "at any time" after his appointment as conservator and subsequent removal of the principal office of the company to apply for a transfer of the proceeding, which the court must grant.

■ While the conservator has requested only prohibition to stay further proceedings in the respondent court, this court has authority to grant any appropriate relief within the issues presented by the pleadings. (*Board of Trustees* v. *State Bd. of Education,* 1 Cal. (2d) 784, 787 [37 Pac. (2d) 84, 96 A. L. R. 775]; 9 Cal. Jur. Ten-Year Supp. 567, sec. 29.) The respondent court is therefore required not only to refrain from further action in the conservatorship proceeding but to transfer that proceeding to Los Angeles County in conformity with the conservator's removal of the principal office of the insurer and in pursuance of his application for such transfer, as authorized by the statutes in question.

In determining this matter we have had access to and have considered the briefs filed by the respondents in three companion cases. Nothing in those briefs requires a contrary conclusion herein.

Let peremptory writs of prohibition and mandate issue respectively restraining the respondent Superior Court from taking any further steps or proceedings in the conservatorship proceeding, now pending in that court, and directing that court to transfer the proceeding to the Superior Court of the State of California in and for the County of Los Angeles.

Gibson, C. J., did not participate in the decision.

EDMONDS, J., Dissenting.—I cannot agree that the Insurance Code allows the commissioner, immediately upon his appointment as conservator of a company having its principal office in San Francisco, to remove that office to Los Angeles. Undoubtedly the purpose of section 1040 is to facilitate the work of the commissioner. But as he maintains an office in San Francisco, removal of the insurance company's office to Los Angeles appears to be a most drastic procedure which should not be approved in the absence of express statutory authority therefor.

By other provisions of the Insurance Code, a company may be summarily seized by the commissioner under an *ex parte* order of the superior court based upon his verified application therefor. Such an order continues in force until, after a full hearing, it appears to the court that the ground for it does not exist or has been removed. (Sec. 1012.) In other words, the company seized may challenge the grounds asserted by the commissioner as justifying his action, and, in the meantime, he is administering its affairs under the condition that he must eventually establish by judicial decree, after hearing, his right so to do.

During this time, particularly, his work should be accompanied with a minimum of inconvenience to the company whose assets he is conserving. In organizations of any size there may be many thousands of policyholders and creditors. To allow him to summarily remove the company's office from the city where it has been carrying on its business for many years, and where he has a large administrative staff, seems to me to impose hardships which the legislature has not sanctioned.

Until 1935, the Liquidation Act (Stats. 1919, p. 268) authorized the commissioner to remove the principal office of a company whose business he was administering "to the city and county of San Francisco." When the Insurance Code was enacted, the legislature made a requirement that the commissioner shall maintain an office in Los Angeles and added to the provision authorizing removal the words "or to the city of Los Angeles." To me, these changes indicate a legislative purpose to broaden his power of removal to include the new office at Los Angeles, but I cannot read into them an intention to authorize the removal of an insurance company's office from San Francisco, where the commissioner also maintains an office, to Los Angeles.

For these reasons, I believe that the writs sought by the applicant should be denied.

Rehearing denied. Edmonds, J., voted for a rehearing.