[L. A. No. 22914.   In Bank.   Oct. 29, 1954.]

Estate of WILLIAM E. SIMPSON, Deceased.   ROBERT
C. KIRKWOOD, as State Controller, etc., Appellant, v.
ETHEL M. SIMPSON, as Executrix, etc., Respondent.

James W. Hickey, Chief Inheritance Tax Attorney, Walter H. Miller, Senior Inheritance Tax Attorney, and William R. Elam, Associate Inheritance Tax Attorney, for Appellant.

J. E. Simpson for Respondent.

SPENCE, J.—The Controller of the State of California appeals from an order of the probate court sustaining respondent's objections to the corrected inheritance tax report, which subjected certain death benefits paid to respondent under the Los Angeles County Employees' Retirement System to inheritance tax. The court held that such payments were exempt

from the tax. (Gov. Code, § 31452.) Appellant challenges the propriety of that decision and in our opinion, his objection must be sustained.

William E. Simpson and Ethel M. Simpson were married December 31, 1912, and were husband and wife at the time of Mr. Simpson's death on April 28, 1951. For many years preceding his death, Mr. Simpson was an employee of the county of Los Angeles and a member of the Los Angeles County Employees' Association. Pursuant to the County Employees' Retirement Law of 1937 (now Gov. Code, pt. 3, §§ 31451-31794), he had made contributions to the association's retirement fund between August 1, 1940, and March 31, 1951. On July 9, 1940, he had designated his wife as the beneficiary to receive the death benefits under the act. (Gov. Code, § 31780.) Upon his death she received the sum of $15,856.26 (Gov. Code, §§ 31780-31781), of which amount $7,676.42 was a return of decedent's contributions, $679.84 was interest thereon, and $7,500 was a contribution made by the county. (Gov. Code, § 31781, subd. (b).) The inheritance tax appraiser included in his report the $15,856.26 as a taxable gift in contemplation of death (Rev. & Tax. Code, §§ 13641-13648), finding such sum to be community property, with one-half or $7,928.13 entitled to the community exclusion and the other half subject to inheritance tax. Decedent's wife filed written objections to the report, claiming that the death benefits paid to her under the retirement law were exempt from inheritance taxation. (Gov. Code, § 31452.) The court sustained the objections and ordered the $15,856.26 excluded from the taxable estate in computing the amount of inheritance tax.

Section 31452 of the Government Code provides: "The right of a person to a pension, annuity, retirement allowance, return of contributions, the pension, annuity or retirement allowance, any optional benefit, any other right accrued or accruing to any person under this chapter, the money in the fund created or continued under this chapter, and any property purchased for investment purposes pursuant to this chapter, are exempt from taxation, whether state, county, municipal, or district, and from any law relating to bankruptcy or insolvency. They are not subject to execution, garnishment, attachment, or any other process of court whatsoever, and are unassignable except as specifically provided in this chapter." The determinative question is whether the statutory words "are exempt from taxation" include an

exemption from the inheritance tax, which is a privilege tax as distinguished from a general property tax.

■ The inheritance tax is not a tax on the property itself, but is an excise imposed on the privilege of succeeding to property upon the death of the owner. (*Estate of Bloom,* 213 Cal. 575, 581 [2 P.2d 753]; *Estate of Barter,* 30 Cal.2d 549, 556 [184 P.2d 305]; Cal. Admin. Code, tit. 18, p. 89.) ■ It arises under a general law (Inher. Tax Law, Stats. 1943, ch. 658, § 1, p. 2297; Rev. & Tax. Code, §§ 13301-14901), dealing with a particular area of taxation. ■ An exemption from the burden of such general statute must be clearly shown and will not be inferred from the doubtful import of statutory language. (24 Cal.Jur. § 73, p. 89; 51 Am.Jur. §.524, p. 526; *Estate of Steehler,* 195 Cal. 386, 396 [233 P. 972].) Government Code, section 31452, contains only the general words ''exempt from taxation,'' for application without particularization. Relying upon the rule that any exception from the operation of a general statute must be specific in order to be effectual (*Los Angeles Ry. Corp.* v. *Los Angeles Flood Control Dist.,* 78 Cal.App. 173, 182 [284 P. 532]; *In re Goddard,* 24 Cal.App.2d 132, 139 [74 P.2d 818]), and that the asserted exemption will be strictly construed against the one claiming its benefit (24 Cal.Jur. § 73, pp. 89-90; *Lockhart* v. *Wolden,* 17 Cal.2d 628, 631 [111 P.2d 319]; *Helping Hand Home for Children* v. *San Diego,* 26 Cal.App.2d 452, 458-459 [78 P.2d 778]), appellant maintains that said section 31452 does not provide an exemption from the inheritance tax.

■ Our constitutional requirement of uniformity and equality of taxation has always been construed to apply to direct property taxes (now art. XIII, § 1) and to have no bearing upon an excise or privilege tax such as a levy under the Use Tax Act (Stats. 1935, ch. 361, p. 1297; *Douglas Aircraft Co., Inc.* v. *Johnson* (1939), 13 Cal.2d 545 [90 P.2d 572]) or license fees assessed for the right to carry on certain businesses. (*People* v. *Naglee* (1850), 1 Cal. 232 [52 Am.Dec. 312]; *People* v. *Coleman* (1854), 4 Cal. 46 [60 Am.Dec. 581]; *Emery* v. *San Francisco Gas Co.* (1865), 28 Cal. 345; *Los Angeles* v. *Los Angeles Independent Gas Co.* (1908), 152 Cal. 765 [93 P. 1006].) [5] Local assessments do not come within the meaning of the word ''tax'' as used in the constitutional provision exempting lands of the state from taxation. (*City of San Diego* v. *Linda Vista Irr. Dist.* (1895), 108 Cal. 189 [41 P. 291, 35 L.R.A. 33].) The constitutional

exemptions from taxation refer only to property taxes. (E.g., art. XIII, § 1a [colleges]; § 1b [burial plots]; § 1c [property used for religious, hospital and charitable purposes]; § 1½ [church property]; § 1½a [orphanages].) ▮ The constitutional exemption of $1,000 allowed to veterans extends only to property taxes and not to an excise or privilege tax under the Motor Vehicle License Fee Act. (Stats. 1935, ch. 362, p. 1312; *Ingels* v. *Riley* (1936), 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1].) ▮ The exemption of state, municipal and district bonds from taxation applies only to property taxes and does not preclude inclusion of the interest from such bonds in the net income base by which the state franchise tax is measured. (Art. XIII, § 1¾; *Pacific Co., Ltd.* v. *Johnson* (1931), 212 Cal. 148 [298 P. 489].)

The history of retirement legislation in this state must also be considered in relation to section 31452 of the Government Code. The 1919 County Employees' Retirement Act (Stats. 1919, ch. 373, p. 782) is the first act to be noted, declaring the member's wage deductions, his "right . . . to an annuity" and "all his rights in the fund of the retirement system" to be "exempt from taxation." Then followed the Peace Officers' Retirement Act of 1931 (Stats. 1931, ch. 268, p. 477), stating "the right of a peace officer or other person to an annuity or pension and all of their rights in the fund herein provided" to be "exempt from taxation." That same year, 1931, the State Employees' Retirement Act (Stats. 1931, ch. 700, p. 1442) was adopted in almost identical language as contained in said section 31452, except that no provision for exemption from taxation was made but only exemption from "execution, garnishment, attachment . . ." In the light of this legislative background, the County Employees' Retirement Law of 1937 was enacted (Stats. 1937, ch. 677, § 2, p. 1898; now Gov. Code, §§ 31450-31477), with section 32 thereof now embodied in said section 31452. It is fairly arguable that the wording of this latter act in its exemption provision was patterned after the prior retirement acts. Likewise reasonable is the assumption that the Legislature intended the tax exemption therein contained to apply only to property taxes as previously construed. Between 1937 and 1947, the year when the 1937 retirement act was adopted into the Government Code (Stats. 1947, ch. 424, § 1, p. 1263), our courts again construed our Constitution, article XIII, section 1 (uniformity and equality of taxes) and section 1a (the college exemption) to refer only to property

tax exemptions, and not to excise or privilege tax exemptions. (*Brunton* v. *Superior Court* (1942), 20 Cal.2d 202 [124 P.2d 831]; *California Inst. of Technology* v. *Johnson* (1942), 55 Cal.App.2d 856 [132 P.2d 61].)

Prior to the enactment of our 1937 retirement law, a comprehensive exemption statute of New York (Greater New York Charter, § 1092, subd. W, Laws 1901, ch. 466, as amended by Laws 1917, ch. 303) had been interpreted and construed by the courts of that state as exempting the cited rights and benefits from state inheritance taxation. (*In re Morrison's Estate* (1927), 130 Misc. 438 [224 N.Y.S. 346]; *In re Fischer's Estate* (1928), 132 Misc. 204 [229 N.Y.S. 826], aff. 229 N.Y.S. 855.) The similarity between the New York law (Greater New York Charter, § 1092, subd. W) and our 1937 act lies in their substantially identical recital of matters subject to exemption: (1) the right of a person to a pension, annuity, retirement allowance, return of contributions; (2) the pension, annuity, or retirement allowance; (3) any optional benefit, any other right accrued or accruing to any person under the act; (4) the money in the fund created under the act. However, the respective exemption provisions differ materially. The New York exemption clause reads "exempt from any state or municipal tax, and exempt from levy and sale, garnishment, attachment, or any process whatsoever, and shall be unassignable except as in the Act specifically otherwise provided," whereas the California exemption clause reads "exempt from taxation, whether State, county, municipal, or district, and from any law relating to bankruptcy or insolvency. They are not subject to execution, garnishment, attachment, or any other process of court whatsoever, and are unassignable except as specifically provided in this chapter."

Assuming that the Legislature had knowledge of the New York law and its construction (*Estate of Potter,* 188 Cal. 55, 68 [204 P. 826]; *Canfield* v. *Security-First Nat. Bank,* 13 Cal. 2d 1, 14 [87 P.2d 830]; *Holmes* v. *McColgan,* 17 Cal.2d 426 430 [110 P.2d 428]), it significantly did not adopt the exemption language of the New York law but instead adhered to the legislative pattern of our own California law and the long-prevailing phraseology of the wording "exempt from taxation." Thus, the word "any" was used in the New York exemption clause, a word broad enough to comprehend, in its enlarged and plural sense, all state or municipal taxes, without limitation. (3 C. J. S. p. 1400; *Doble* v. *Superior Court,*

197 Cal. 556, 565 [241 P. 852]; *Powell* v. *Allan,* 70 Cal.App. 663, 668 [234 P. 339]; *People* v. *Shah,* 91 Cal.App.2d 716, 721 [205 P.2d 1081].) But in drafting our 1937 act, the Legislature chose not to include the word "any" in the tax exemption clause, a deletion consistent with an intent to effect a different application. (23 Cal.Jur. § 154, p. 778; *People* v. *Valentine,* 28 Cal.2d 121, 142 [169 P.2d 1, 167 A.L.R. 675]; *Southern Pac. Co.* v. *McColgan,* 68 Cal.App.2d 48, 54-55 [156 P.2d 81].) Changes in wording and phraseology are presumed to have been deliberately made (82 C.J.S. p. 859), and presumably the Legislature knew the existing laws and decisions. (23 Cal.Jur. § 159, pp. 782-783.) Therefore, it may reasonably be said that the difference intended in the California act was the application of the exemption only to property taxation in line with the construction which had been repeatedly given to the words "exempt from taxation" as embraced in our above-cited constitutional provisions. (See *Pacific Co., Ltd.* v. *Johnson, supra,* 212 Cal. 148, 154-155; *Ingels* v. *Riley, supra,* 5 Cal.2d 154, 159.)

Moreover the New York courts have made relevant distinctions in construing the tax exemption laws. While in *In re Morrison's Estate* (1927), *supra,* 224 N.Y.S. 346, the sums paid to the deceased employee's estate from a retirement fund were held not subject to the state transfer tax, in *In re Schaeffer's Estate* (1927), reported in the same volume, 224 N.Y.S. 305, the proceeds of a war risk insurance policy payable to the estate of the insured was held subject to the state transfer tax. In the Schaeffer case it was said at page 307: "Provision exempting property from taxation does not exempt the transfer thereof upon the death of the owner from the succession or transfer tax. The exemption applies to taxation upon the property itself and not to excise or privilege taxes imposed upon the transfer thereof at the death of the owner." Cited as authority for this conclusion is *Plummer* v. *Coler* (1899), 178 U.S. 115 [20 S.Ct. 829, 44 L.Ed. 998], holding that United States bonds containing a clause of exemption from state and federal taxation, were nevertheless subject to the New York state transfer tax, which was "regarded as imposed, not on the bonds, but upon the privilege of acquiring property by will or inheritance." (P. 134; in accord, *Greiner* v. *Lewellyn* (1922), 258 U.S. 384 [42 S.Ct. 324, 66 L.Ed. 676].) Likewise the tax exemption clause in United States bonds does not preclude their subjection to the federal estate tax. (*Murdock* v. *Ward* (1900), 178 U.S. 139

[20 S.Ct. 775, 44 L.Ed. 1009].) See also *In re Riegelmann's Estate* (1942), 178 Misc. 475 [34 N.Y.S.2d 904], for further distinctions in the purport of tax exemptions.

Similarly the federal courts have held that the statutory immunity of war risk insurance from taxation does not include an immunity from excises upon the occasion of shifts of economic interests brought about by the death of an insured. Thus, in *United States Trust Co.* v. *Commissioner of Int. Rev.* [C.A.A.2d Cir., 1938], 98 F.2d 734, the proceeds of a war risk insurance policy payable to a deceased veteran's widow were held properly includable in his gross estate under a federal estate tax. Recognizing that by "the express provisions of section 28 of the War Risk Insurance Act, 40 Stat. 609, insurance payable on such a policy is exempted from taxation," the "estate tax" was distinguished as "an excise tax upon the right to transfer property upon death . . . a tax upon the privilege and not upon the property itself," and therefore there was "no conflict between the exemption statute and the estate tax statute." (P. 735.) This case went to the Supreme Court of the United States, *United States Trust Co.* v. *Helvering* (1939), 307 U.S. 57 [59 S.Ct. 692, 83 L.Ed. 1104], and was affirmed. In the latter opinion at page 59, attention was directed to "the provision of the World War Veterans' Act, 1924, that insurance thereunder 'shall be exempt from taxation' " and the "amendment to that Act of August 12, 1935" providing that " 'Payments of benefits due or to become due . . . shall be exempt from taxation. . . . ' " It was then said, at pages 59-60: ". . . this amendment served only to clarify the original provision for exemption, without more. Unless resort is had to enlargement by implication, this exemption means only that the proceeds or benefits of a War Risk policy are exempt from taxation. Exemptions from taxation do not rest upon implication. An estate tax is not levied upon the property of which an estate is composed. It is an excise imposed upon the transfer of or shifting in relationships to property at death." And again the cases of *Plummer* v. *Coler, supra,* 178 U.S. 115, and *Murdock* v. *Ward, supra,* 178 U.S. 139, are cited as supporting authority .

It is argued that since at the time our 1937 retirement act was adopted, the rights, benefits and money in the retirement fund were not subject to any state property tax but only to state "inheritance, gift and income taxes," the exemption

clause must have been intended to apply to these latter taxes pursuant to the prevailing state tax system rather than to have a meaningless reference to a nonexistent state property tax. Upon amendment of our Constitution in 1910 (art. XIII, § 14), a radical change was made in our system of taxation in that the subjects of state and local taxation were divided: whereas formerly taxes for state purposes were raised in the same manner as county taxes, that is, by ad valorem levy upon all taxable property in the state (*Miller & Lux, Inc.* v. *Richardson,* 182 Cal. 115, 119-120 [187 P. 411]), the amendment effected a separation of state and county taxes, with the state ordinarily limiting its taxation to the properties of certain corporations computed on a gross receipts basis and to franchises. (*Bank of California, Nat. Assn.* v. *Roberts,* 173 Cal. 398, 400 [160 P. 225]; *Northwestern Mut. Life Ins. Co.* v. *Johnson,* 8 Cal.2d 42, 46 [63 P.2d 814].) "In lieu" of all other property taxes theretofore levied by the state, these gross receipt taxes themselves constituted "taxes upon property rather than upon receipts or income." (*Pullman Co.* v. *Richardson,* 185 Cal. 484, 487 [197 P. 346]; see 24 Cal.Jur., § 370, p. 399 et seq.) ▆▆ But despite said amendment of our Constitution in 1910 or any later amendment relating to the ordinary sources of our state revenues, the state may still resort to ad valorem taxation in the event that the ordinary sources should prove insufficient, for the Legislature may provide for the raising of revenue by any form of taxation not prohibited by our Constitution. (Art. XIII, § 15; 24 Cal.Jur. §§ 26-27, pp. 43-45, and cases cited.) ▆▆ Thus in the event that the Legislature should determine in any year to adopt some plan of ad valorem taxation for state purposes (art. XIII, § 1), section 31452 of the Government Code would serve to exempt the rights, benefits and money in the retirement fund from such taxation. Accordingly, the exemption clause in question may not be deemed meaningless but rather suggests that the Legislature used the wording "exempt from taxation" to provide the same limit of tax exemption as had long been ascribed to those words in our tax laws.

In view of the foregoing observations, the most that can be said in favor of the extended application of the exemption clause here sought is that the statute may provoke some doubt as to its intended scope. ▆▆ Settled principles of statutory construction require that any doubt be resolved against the right to the exemption. (*Sutter Hospital* v. *City of Sacramento,* 39 Cal.2d 33, 39 [244 P.2d 930].) Under the

circumstances, this court would not be justified in holding the exemption from taxation clause to apply beyond the limits of property taxation, and if further extension is deemed appropriate so as to include excise or privilege taxes, such as the state inheritance tax, the act should be so clarified by the Legislature in unmistakably clear language.

The order is reversed.

Edmonds, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—In my view the opinion prepared for the District Court of Appeal by Justice McComb and concurred in by Presiding Justice Moore and Justice Fox (reported in (Cal.App.) 267 P.2d 834), adequately discusses and correctly resolves the questions presented on this appeal. For the reasons therein stated I would affirm the order of the trial court.

Shenk, Acting C. J., and Dooling, J. pro tem.,* concurred.

Respondent's petition for a rehearing was denied November 24, 1954. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.