Opinion
STEPHENS, J.
The question presented here is whether two rooms (360 square feet) out of a total building area of 1,038,586 square *687 feet are a “home office” or “principal office” in this state, thereby allowing a deduction for taxes paid on the whole of such property under former California Constitution, article XIII, section 28, subdivision (e) (1), and former Revenue and Taxation Code, section 12241, subdivision (a).[1] The trial court, on a summaiy judgment motion entered judgment for respondent, J. C. Penney Insurance Company, thereby entitling it to the tax deductions.
The facts are established by stipulation: “1. J.C. Penney Insurance Company, hereinafter called ‘petitioner,’ was incorporated in California on August 22, 1949, under the name ‘Beneficial Fire and Casualty Insurance Company.’ On November 21, 1949, a Certificate of Authority was issued to petitioner by the Insurance Commissioner of the State of California, and it has continuously remained in effect since that date.
“2. On February 3, 1967, petitioner’s Articles of Incorporation were amended to change its name to “J.C. Penney Insurance Company.’
“3. At all times material herein, petitioner was domiciled within the State of California, and was a ‘domestic insurer’ in good standing under the laws of the State of California in accordance with the provisions of Article 13, section 14 475(e)(2) of the California Constitution and Section 12241(b) of the California Revenue and Taxation Code.
*688 “4. On November 25, 1969, plaintiff acquired certain land, improvements and office furnishings located at 6131 Orangethorpe Avenue, Buena Park, County of Orange, California. The deed and instrument conveying said improvements were executed and recorded by the Orange County Recorder on that date. Plaintiff was the owner of subject land and improvements, hereinafter referred to collectively as ‘Buena Park Property,’ throughout the years in question, and has paid all real property taxes thereon. Pursuant to the net lease described in paragraph nine herein, J. C. Penney Company, Inc., reimbursed plaintiff for all real property taxes so paid.
“5. On November 17, 1969, plaintiff’s shareholders and Board of Directors duly adopted a resolution amending plaintiff’s Articles of Incorporation to designate Orange County as the county in this state where the principal office for the transaction of the business of plaintiff is located, in accordance with former section 301(c) of the California Corporations Code. The Amendment of the Articles of Incorporation became effective on November 28, 1969, when filed with the Secretary of State of California, and has remained in effect to the present.
“6. On November 17, 1969, plaintiff’s Board of Directors duly adopted an amendment to the Bylaws designating 6131 Orangethorpe Avenue, Buena Park, County of Orange, California, as the principal office of plaintiff in the State of California. Such designation remained in effect throughout the years in question.
“7. At all times material herein the Buena Park Property was the only real property owned by petitioner in the State of California.
“8. At all times material herein petitioner did not lease or otherwise occupy other real property in the State of California.
“9. The Buena Park Property consists of: 55.697 acres of land upon which and attached thereto are the following—
Office Building 179,318 sq. ft.
Distribution Center818,978 sq.ft.
Auto Center 24,440 sq. ft.
Truck Center 15,850 sq. ft.
*689 “(a) Each of said structures, except for the portion retained by plaintiff and described in subparagraph (b) below, was leased to and occupied by J. C. Penney Company, Inc., a Delaware corporation not licensed to conduct insurance business in any jurisdiction, and possessing “control” over applicant within the meaning set forth in Insurance Code Section 1215(b).
“(b) The portion retained by plaintiff consisted of two rooms each measuring approximately twelve (12) feet wide by fifteen (15) feet long.' Desks and several other items of furniture were located in these two rooms. Except for the use of the rooms by the Assistant Secretary of plaintiff on occasions when he performed certain of the functions listed in paragraph 10 hereof, no person or persons were situated in the rooms on a regular basis during the years in question. The respective walls outside of the two rooms each bore the name plate ‘J. C. Penney Ins. Co.’ (Abbreviations on name plates.)
“10. Beginning on approximately November 25, 1969, and continuing without interruption during all times material herein, and in any event prior to January 1, 1970, the following functions were performed at plaintiff’s Buena Park Property:
“(a) An employee of J. C. Penney Company, Inc., was designated by plaintiff and served as its Assistant Secretary. This person was paid by J. C. Penney Company, Inc., and was not paid by plaintiff. This person’s office for the conduct of J. C. Penney Company, Inc. business was located at the Buena Park Property on premises leased to J. C. Penney Company, Inc.
“(b) The official corporate records including the minute books, stock record book, and the Corporate Seal, were maintained therein, and the transfer of shares of stock of the plaintiff was accomplished therein.
“(c) The advertising files required to be maintained by the California Department of Insurance at the principal office of the Company were maintained therein.
“(d) Plaintiff designated its Buena Park Property as the home office address of plaintiff at which it received official correspondence from various state insurance regulatory agencies during the years in question.
*690 “(e) It was identified as plaintiff’s home office in the annual reports filed with the Insurance Commissioners of the various states; such reports gave 3700 Wilshire Boulevard, Los Angeles, California as the mailing address until 1974.
“(f) It was identified in the insurance policies issued by plaintiff as its home office; such policies gave 3700 Wilshire Boulevard, Los Angeles, California as the mailing address until 1974.
“11. At all times material herein, no meetings of plaintiff’s Executive Committee and Board of Directors have been held in the State of California.
“12. At all times material herein, certain functions were performed for petitioner by Beneficial Standard Life Insurance Company (an independent third party not related to petitioner or J.C. Penney Company, Inc., nor any subsidiaiy thereof), pursuant to a Service Agreement dated February 1, 1967, as amended April 1, 1968, a true copy of which is attached hereto as Exhibit ‘A.’ Throughout this period, the headquarters of Beneficial Standard Life Insurance Company were at 3700 Wilshire Boulevard, Los Angeles, California.
“13. At all times material herein, certain functions were performed for petitioner by J.C. Penney Company, Inc., pursuant to Service Agreement dated February 1, 1967, as amended December 1, 1968, a true copy of which is attached hereto as Exhibit ‘B.’ Throughout this period, the headquarters of J.C. Penney Company, Inc., were at 1301 Avenue of the Americas, New York, New York, and certain of these functions were performed at the Buena Park Property on premises leased to J.C. Penney Company, Inc., including:
“(a) Insertion of advertising and billing material with statements sent by J. C. Penney Company, Inc., to its charge account customers.
“(b) Preparation of magnetic tape lists for insurance solicitation.
“(c) Updating addresses of policy holders.
“(d) Answering policyholder inquiries about the status of premium charges as shown on their J.C. Penney Company, Inc. charge account statements.
*691 “14. On September 29, 1977 defendant denied plaintiff’s claims for refund covering $463,177.96 in taxes and $82,884.69 in interest.”
The parties are in agreement that the application of the tax statutes to the uncontradicted facts present questions of law to this court. (Southern Pacific Equip. Co. v. State Bd. of Equalization (1971) 16 Cal.App.3d 302, 304, fn. 1 [94 Cal.Rptr. 107]; W.E. Hall Co. v. Franchise Tax Bd. (1968) 260 Cal.App.2d 179, 183 [66 Cal.Rptr. 911].)
The thrust of appellant’s contentions is that J. C. Penney Insurance Company created a sham “home office” solely to obtain tax benefits. Appellant points out that “a domestic insurer could receive a principal office deduction only in proportion to the percentage which the area of its principal office bore to the area of the real property in question, if such office were established subsequent to the above deadline. ((Jan. 1, 1970) Former California Constitution, article XIII, § 28, subd. (e)(2); former Rev. & Tax. Code, § 12241, subd. (b).)” There is no dispute that J. C. Penney Insurance Company met the deadline date, and merely because a substantial tax difference may have resulted by the timely action of J. C. Penney Insurance Company does not vitiate the benefits conferred by law, nor should any sinister motive attach to the company; it did what the law provided it might do, quite legitimately if in fact, a “home” office resulted.
We therefore must decide whether under the stipulated facts, J. C. Penney’s office in Buena Park constituted its home office or principal office in California.
Appellant directs our attention to some old federal decisions in order to establish a definition of home office or principal office. In Caceres v. United States Shipping Board E. F. Corp. (E.D.N.Y. 1924) 299 F. 968, 970, the issue was whether the defendants’ principal office was in New York or Washington, D.C. The action involved an injured seaman who sought recovery under the Merchant Marine Act (now the Jones Act). (Act of June 5, 1920, ch. 250, § 33, 41 Stat. 1007.) The act provided that jurisdiction should be “under the court of the district in which the defendant employer resides, or in which his principal office is located.” Citing New York law,[2] the court distinguished principal office and *692 principal place of business. The fact that the greater part of defendant’s business was conducted at the port of New York did not make the New York office the principal office. The court held: “The words ‘principal office’ have a definite meaning, especially when applied to a corporation, in which case they mean the head office, the place where the principal officers generally transact business, and the place to which reports are made and from which orders emanate. [¶] Plaintiff seems to confuse the meaning of ‘principal office’ with ‘principal place of business,’ but the words are not synonymous at least in this state [New York]. . . .” (Caceres v. United States Shipping Board E. F. Corp., supra, 299 F. 968, 970.) As the plaintiff had brought the action in New York, the court granted defendant’s motion to dismiss.
Caceres’ definition of principal office was repeated in Ebanks v. Grace Line (S.D.N.Y. 1947) 73 F.Supp. 749, another case construing the Jones Act, supra. In Ebanks, the court held: “Notwithstanding that Wilmington, Delaware, is designated as the location of Defendant’s principal office by its Certificate of Incorporation and By-Laws, I cannot escape the conclusion that on the facts now before me, such designation is formal only and that as matters of actuality, the principal office of defendant is within this district [the Southern District of New York]. . . .” (Ebanks v. Grace Line, supra, at p. 750.)
The term “principal office” appeared in the California decision of Caminetti v. Superior Court (1941) 16 Cal.2d 838 [108 P.2d 911]. The issue in Caminetti was whether the principal office of an insurer was in San Francisco or Los Angeles for purposes of certain provisions of the Insurance Code. The California Supreme Court held that the written declaration of intent to place the principal office of the insurer in Los Angeles and the removal of the minute book to Los Angeles were *693 sufficient to place the principal there. The court recognized the distinction between principal office and principal place of business. (Caminetti v. Superior Court, supra, 16 Cal.2d at p. 843, citing Mason & Hanger Co. v. Sharon, supra, 231 F. 861, 864.) Although the principal place of business was in San Francisco, the principal office was in Los Angeles.
Both sides in the instant case have found language in Caminetti to support their positions. However, we need not determine which of the versions is the correct interpretation of Caminetti, nor need we evaluate the precedential value of the cited federal cases. (See Debtor Reorganizers, Inc. v. State Bd. of Equalization (1976) 58 Cal.App.3d 691 [130 Cal.Rptr. 64].) All of the above cases involved a choice between two locations of a principal office for different statutory purposes. In the instant case we have but one location of an alleged principal office.
Respondent calls to our attention various sections of the Corporations Code which contained the term “principal office” prior to the 1977 amendments. Our analysis, however, is directed to the interpretation of a tax statute. There are accepted canons of construction applicable to such legislation, and we must apply them here.
Former constitutional section 28, subdivision (f), paragraph (3), of article XIII and section 12241 of the Revenue and Taxation Code reflect the public policy to offer insurers an offset for deduction for real estate taxes against the gross premiums tax. The Supreme Court in North western Mut. Life Ins. Co. v. Johnson (1936) 8 Cal.2d 42 [63 P.2d 814], distinguished an exemption from a deduction or offset. Settled principles of statutory construction require that any doubt be resolved against the right to the exemption. (Estate of Simpson (1954) 43 Cal.2d 594 [275 P.2d 467, 47 A.L. R.2d 991]; Cypress Lawn C. Assn. v. San Francisco (1931) 211 Cal. 387 [295 P. 813].) The court in Northwestern held that section 14[3] of article XIII of the California Constitution created a deduction or offset as opposed to an exemption. The court interpreted the gross premiums tax and the deduction provided for in the Constitution to be a “specific mode of taxation in substitution of other modes.” (Northwestern Mut. Life Ins. Co. v. Johnson, supra, at p. 47.) The purpose of the taxation scheme in question is to divide the subjects of taxation for state and local purposes. (Id.) The key to distinguish an exemption from an offset is whether the taxes are required to be paid. (Id., at p. 46.) The principal office deduction allows an insurer to deduct *694 real estate taxes that it has paid from its gross premiums tax. Thus, the real estate taxes may be deemed to be “in lieu” of the gross premiums tax.
The court in Northwestern adopted a liberal principle of construction to be used when a deduction as opposed to an exemption is involved. (See also California-Western States Life Ins. Co. v. State Board of Equalization (1959) 171 Cal.App.2d 801 [341 P.2d 51]; 57 Ops.Cal.Atty.Gen. 104 (1974); 20 Ops.Cal.Atty.Gen. 238 (1952).)
The thrust of the preceding authority prevents this court from adding any sort of limitation on the deduction provided for by the California Constitution: We must merely examine the facts and determine if respondent maintained a “principal office” on the property in question as that term is used in its ordinary, everyday meaning. There is nothing in the constitutional or statutory provisions in question which places a minimum business volume requirement upon an insurer’s office in order to qualify for the deduction. Therefore, this court cannot add such a requirement.
The office in question is respondent’s only office in this state, and respondent has designated it as its principal office.[4] This court cannot disturb that designation merely because the office does not have the volume of activity that appellant would require in order to qualify for the deduction.
The judgment is affirmed.
Ashby, J., concurred.

The years of claimed tax exemption are 1969 through 1975 (before the effective date of the 1977 constitutional amendments). California Constitution, article XIII, section 28, subdivision (e)(1) provided as follows: “Each insurer shall have the right to deduct from the annual tax imposed by this section upon such insurer in respect to a particular year the amount of real estate taxes paid by it, in that year, before, or within 30 days after, becoming delinquent, on real property owned by it at the time of payment, and in which was located, in that year, its home office or principal office in this state. Such real property may consist of one building or of two or more adjacent buildings in which such an office is located, the land on which they stand, and so much of the adjacent land as may be required for the convenient use and occupation thereof.” Revenue and Taxation Code, section 12241, subdivision (a) provided as follows: “Each insurer shall have the right to deduct from the tax imposed by this chapter upon an insurer in respect to a particular year the amount of real estate taxes paid by it, in that year, before, or within 30 days after, becoming delinquent, on real property owned by it at the time of payment, and in which was located, in that year, its home office or principal office in this state. Such real property may consist of one building or of two or more adjacent buildings in which such an office is located, the land on which they stand, and so much of the adjacent land as may be required for the convenient use and occupation thereof.”

The court cited Mason & Hanger Co. v. Sharon (2d Cir. 1916) 231 F. 861, 864, for this proposition. The court in Mason was applying New York law in a personal injury action. The applicable statute required notice of the claim to be delivered to the defendant’s *692 principal office. The instructions which were given to the jury in this case are interesting: “ ‘What does “principal office” mean? I should say that an office that they themselves regarded as their real headquarters, and that in itself is to be determined by the things that they did there, and at any other office. The comparative importance of the things they did at the two places, not the actual work that is being done under the contract, because a man can have his principal office downtown and have his work away uptown. But the office. The office is the place for correspondence, it is the place for the bookkeeping. It is the place for the people themselves to regard as their headquarters. The place for the executive officers of the corporation. “ ‘In your judgment did these parties, the officers of the defendant, on September 4, 1913, consider, and were they in reason justified in considering Van Cortlandt Park as their real headquarters and principal office, or did they consider and were they justified in considering Cornwall on the Hudson as their principal office?’ ” (Id, at p. 863.) That court seemed to feel that the subjective determination of the parties as to the location of their principal office was dispositive.

 Later section 28.

This court recognizes that a corporation’s designation of a certain place as its principal office is not always dispositive of that issue. (Partch v. Adams (1942) 55 Cal.App.2d 1 [130 P.2d 244], However, Partch again involves a factual determination as to which of two locations was the principal office of the corporation.