## MURDOCK v. WARD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 458. Argued December 5, 6, 7, 1899. — Decided May 14, 1900.

*Knowlton* v. *Moore*, *ante*, 41, followed in this case as to the points there decided.

*Plummer* v. *Coler*, *ante*, 115, affirmed and followed in this case.

As the parties below proceeded upon a mutual mistake of law in construing and applying the statute the court thinks that the practical injustice that might result from an affirmance of the judgment may be avoided by reversing it at the cost of the plaintiff in error, and sending the cause back to the Circuit Court, with directions to proceed therein according to law.

In October, 1899, George T. Murdock, as executor of the last will and testament of Jane H. Sherman, brought an action in the Supreme Court of the State of New York, against John G. Ward, collector of internal revenue for the fourteenth district of the State of New York, wherein the plaintiff sought to recover the sum of $36,827.53, which the plaintiff alleged had been unlawfully exacted from him as executor of said estate.

On petition of the defendant, the cause was removed into the Circuit Court of the United States for the Southern District of New York.

The complaint contained the following allegations:

"I. Jane H. Sherman, late of the village of Port Henry, in the county of Essex and State of New York, died on about the 30th day of September, 1898, leaving certain property, and also leaving a last will and testament, in and by which said will this

plaintiff, George T. Murdock, was appointed to be, and by due order of the surrogate of the county of Essex, in the State of New York, to whom jurisdiction in that behalf pertained, he has become, and is, the sole executor of the said last will and testament of said Jane H. Sherman.

" II. The plaintiff further alleges and states that the said Jane H. Sherman, deceased, upon her death left a very considerable amount of personal property, amounting to upwards of one million of dollars.

" III. That the defendant, John G. Ward, at all the times mentioned in this complaint, was and he is collector of internal revenue for the fourteenth district of the State of New York, having his office and official place of residence at the city of Albany, in the State of New York.

" IV. That said John G. Ward, assuming to act as such collector, and assuming and pretending to act under and by virtue of the laws of the United States, which he assumed conferred authority upon him therefor, and particularly under and in pursuance of the provisions of an act of the Congress of the United States, commonly known as the ' war revenue law ' of June 13, 1898, and being an act to provide ways and means to meet war expenditures, and for other purposes, passed by the Congress of the United States, and becoming a law on the 13th day of June, 1898, did, on or about the fourth day of April, 1899, by force and duress, exact, demand and collect from this plaintiff and from the estate represented by him as such executor the sum of thirty-six thousand eight hundred and twenty-seven dollars and fifty-three cents, ($36,827.53,) and upon the claim and under the pretext that the same was a lawful assessment as an internal revenue tax upon the estate of said deceased and against this plaintiff, as executor of said deceased, on account of the legacies or distributive shares arising from personal property, being in charge or trust of this plaintiff, as such executor as aforesaid, the properties assumed to be assessed for such tax being properties passing from the said Jane H. Sherman.

" V. That on or about the 8th day of April, 1899, this plaintiff, under protest, and protesting that he was not nor was the estate represented by him liable to pay said tax, involuntarily

and under duress, because of the illegal demand made upon him by said defendant, did pay to the said defendant as such collector, as aforesaid, the said sum of $36,827.53.

"VI. That thereafter, believing the imposition of said tax and its collection to be unlawful, this plaintiff did appeal to the Commissioner of Internal Revenue and to the Treasury Department of the United States of America from the action and decision of said defendant in holding this plaintiff to be liable for the payment of said tax and in collecting the said tax in manner aforesaid, and did state and represent to said Commissioner that the collection of said tax was unlawful, and that the amount thereof should be refunded for the following reasons:

" 'First. The imposition of said tax was unconstitutional, unlawful and void.

" 'Second. The imposition and collection of said tax deprived this deponent of his property and the estate represented by him of its property without due process of law.

" 'Third. That the law imposing said tax is not uniform, and does not afford equal protection of the laws to persons throughout the United States.

" 'Fourth. That the law imposing said tax denied and does deny to persons throughout the United States and within its jurisdiction the equal protection of the laws.

" 'Fifth. That the law under which said tax was imposed denies to this deponent the equal protection of the laws.

" 'Sixth. The tax so imposed is a direct tax, and is void because not apportioned among the States in proportion to their population and in accordance with the provisions of the Constitution of the United States.

" 'Seventh. If said tax is an impost, excise or duty, the law imposing the same is unconstitutional and void, because the tax levied is not uniform throughout the United States, as required by the Constitution of the United States; and

" 'Eighth. It is not within the province of the constitutional powers of the United States to levy a tax upon a right of inheritance or disposition by will, provided for by the laws of the State of New York.'

" And this plaintiff did, in and by such appeal, claim that he was entitled to have the sum of money so paid and the amount thereof refunded, and he did then and there ask and demand the return of the same moneys to him, and did appeal from the act of said defendant, as such collector, in imposing said tax and exacting from plaintiff payment of the amount thereof.

" VII. On the 21st day of October, 1899, the said Commissioner of Internal Revenue and the Treasury Department of the United States, represented by the said Commissioner of Internal Revenue, did disallow the appeal of this plaintiff in the behalf above stated, and did reject the claim of the plaintiff to have refunded the amount of the tax paid as aforesaid.

" VII. A very large proportion and at least one third of the personal estate upon account of which said tax was exacted from and paid by this plaintiff consisted in the bonds and interest-bearing evidences of debt issued by the government of the United States, and which by contract between the United States and the holders thereof were and are not subject or liable to assessment or taxation, nor was or is this plaintiff subject or liable to assessment or taxation by means of his ownership or holding, as executor, as aforesaid, or otherwise of such bonds and certificates of indebtedness.

" IX. This plaintiff claims and charges that by reason of the premises the amount of said tax has been unlawfully exacted from him as executor of said estate; that each and every of the grounds stated by him in the above-mentioned appeal to the said Commissioner of Internal Revenue states and represents a true and lawful reason why the imposition of said tax is unlawful and why the said tax should be refunded.

" Wherefore this plaintiff demands judgment against the said defendant for the sum of thirty-six thousand eight hundred and twenty-seven dollars and fifty-three cents, ($36,827.53,) with interest from the 8th day of April, 1899, with the costs of this action."

The defendant, appearing by Henry L. Burnett, United States attorney for the Southern District of New York, demurred to the complaint upon the ground that the complaint did not state facts to constitute a cause of action.

On November 14, 1899, after hearing, the Circuit Court sustained the demurrer and ordered the complaint to be dismissed with costs to the defendant. Thereupon a writ of error was allowed to the judgment and the cause was brought to this court.

*Mr. John G. Carlisle* and *Mr. Charles E. Patterson* for plaintiffs in error. *Mr. Alpheus T. Bulkeley* was on Mr. Patterson's brief.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

That the tax imposed under the provisions of the revenue act of June 13, 1898, is a direct tax, and, therefore, void because not apportioned among the States in proportion to their population ; that if not a direct tax, but an impost, excise or duty, it is void, because the tax levied is not uniform throughout the United States ; and that it is not within the province of the constitutional power of the United States to levy a tax upon a right of inheritance or disposition by will, provided for by the laws of the State of New York, are contentions of the plaintiff in error which have been determined against him in the case of *Knowlton and Buffum, Executors,* v. *Moore, Collector, ante,* 41, just decided by this court. The opinion in that case so fully discusses the arguments urged in support of those propositions that their further consideration is unnecessary.

The remaining question is that presented by the following assignment of error :

" The court erred in refusing to find that, in so far as the estate of the deceased consisted of the government bonds of the United States mentioned in said complaint, the Congress had no right or authority to impose or assess any tax upon the same, and in refusing to find that the plaintiff in error was entitled to recover back from the defendant in error in this action the amount of the tax mentioned in his complaint, and which was assessed against the plaintiff in error because of his ownership as executor, as aforesaid, of such bonds of the government of the United States."

The only allegation in the complaint respecting bonds of the United States is contained in the eighth paragraph, which is as follows:

"A very large proportion and at least one third of the personal estate upon account of which said tax was exacted from and paid by this plaintiff consisted in the bonds and interest-bearing evidences of debt issued by the government of the United States, and which by contract between the United States and the holders thereof were and are not subject or liable to assessment or taxation, nor was or is this plaintiff subject or liable to assessment or taxation by means of his ownership or holding as executor, as aforesaid, or otherwise, of such bonds and certificates of indebtedness."

The complaint does not set forth the terms of the will, nor attach a copy of it as an exhibit. And it is suggested in the brief of the Solicitor General, filed on behalf of the United States, that, as presented by the record, this is not a case where United States bonds have passed from the testatrix to legatees, but where a personal estate of a certain value in money has passed to the executor to be charged against him as money, to be distributed among the beneficiaries under the will; and that, therefore, for aught that appears, the executor may have sold every bond and distributed the proceeds in money; and that, even if legatees, entitled to certain sums of money, shall have accepted United States bonds in lieu of money, they would take the bonds, not under the will, but as purchasers.

However, the complaint does allege that the money which is sought to be recovered was assessed against the plaintiff as executor of the deceased "on account of legacies or distributive shares arising from personal property being in his charge or trust, as such executor as aforesaid, the properties assumed to be assessed for such tax being properties passing from the said Jane H. Sherman," and were paid by him under duress. Such allegations, taken in connection with that contained in the eighth paragraph, above quoted, to the effect that, of the property taxed, at least one third part consisted of United States bonds, makes it to sufficiently appear that United States bonds, in the hands of the plaintiff as executor or trustee under a will, were

included as a portion of the estate passing to the executor, and were assessed and taxed as such portion. It may also be observed that it is the executor or trustee who has in charge the legacies or distributive shares arising from personal property, passing after the passage of the act, from any person possessed of such property, who is the person taxed in respect to such property. Accordingly, we think there is room in this record for the contention of the plaintiff in error that, as matter of fact, bonds of the United States formed a portion of the property actually assessed; and that, consequently, the court is called upon to determine whether it was obligatory on the executor of Jane H. Sherman to include in his statement to the collector bonds of the United States in his possession and charge as such executor, and whether it was the right and duty of the collector to demand and receive from the executor a sum of money measured by the value of the property in his hands, although composed in part of United States bonds.

Putting aside, as already disposed of in the case of *Knowlton* v. *Moore*, the claims that inheritance and legacy taxes imposed by the United States in the act of June 13, 1898, are invalid because, as direct taxes, not apportioned, or, as duties, for want of uniformity, or because the taxing power of the United States does not reach such property transmissible under the laws of the States, it is conceded, as we understand the argument of the plaintiff in error, that United States bonds would be properly included in estimating the amount of an inheritance or legacy tax, were it not for the clauses contained in the United States statutes exempting such bonds from state and Federal taxation. On the other hand, it is not denied by the counsel for the government that it was the intention of those clauses to exempt the bonds and interest thereon from any Federal tax, direct or indirect. What is denied is that there was any intention on the part of Congress, by the clauses mentioned, to exempt the portion of an estate invested in United States bonds from either a state or Federal inheritance tax.

It is claimed by the plaintiff in error, and conceded by the government, that the exemption clause was incorporated into the bonds and became a subsisting contract between the gov-

ernment and the bondholders. It is further contended on the one side and conceded on the other, that this contract extends to the *assigns* of the holders. But a legal issue is joined when it is affirmed by the plaintiff in error and denied by the government, that *assigns.* must be. interpreted to include those whose title is derived under the inheritance and legacy laws of the States.

It has just been decided by this court, in the case of *Plummer, Executor,* v. *Coler, ante,* 115, where the question involved was the validity of the inheritance tax law of the State of New York when applied to a legacy consisting of United States bonds containing a clause of exemption from .state and Federal taxation, that the conclusion fairly to be drawn from the state and Federal cases is that the right to take property by will or descent is derived from‐ and regulated by municipal law; that, in assessing a tax upon such right or privilege, the State may lawfully measure or fix the amount of the tax by referring to the value of the property passing; and that the incidental fact that such property is composed, in whole or in part, of Federal securities, does not invalidate the tax or the law under which it is imposed.

It may be said that' in that case we were dealing with the sovereign power of a State to tax property within her own limits; but still the contention had to be met that Federal bonds were not within the taxing power of the State, not only because they were declared to be exempt from state taxation in any form, but because they were means devised by the government to raise money, and that such a purpose might .be defeated if the States were permitted to tax the bonds in the hands of their holders. The conclusion, however, was reached, following state and Federal cases cited, that the inheritance or legacy tax law of the State of New York did not expressly, or by necessary implication, propose to tax Federal securities; that the tax was not imposed on the property passing under the state laws, but on the right of transfer by will or under the intestate law of the State; that whatever the form of the property, the right to succeed to it is created by law, and if it consists of United States bonds, the transferee derives his right to take them, as

he does his right to take any other property of the decedent, under the laws of the State, and the State by its statutes makes the right subject to the burden imposed.

A similar distinction has been recognized by several of the state courts, which have held that while a tax imposed on United States bonds by a state statute would be invalid because beyond the reach of the state's power to tax, yet that a tax upon the franchises or capital stock of a state corporation, measured by the value of its entire property, would be valid, even if the property was composed in whole or in part of Federal securities, because the tax can be regarded as imposed, not on specific property, but on the rights and privileges bestowed by the State. *Commonwealth* v. *Provident Institution,* 12 Allen, 312; *Commonwealth* v. *Hamilton Manuf'g Company,* 12 Allen, 298; *Coite* v. *Society for Savings,* 32 Conn. 173.

The judgments in those cases, holding that state taxes may be lawfully imposed, the amount of which may be determined by the aggregate amount of the property or capital stock of banking or manufacturing companies, even if such property or capital stock includes United States bonds issued under a statute declaring them exempt from taxation under state authority, were affirmed by this court. *Society for Savings* v. *Coite,* 6 Wall. 594; *Insurance Co.* v. *Massachusetts,* 6 Wall. 611; *Hamilton Manufacturing Co.* v. *Massachusetts,* 6 Wall. 632.

Without repeating the discussion in the opinion in *Plummer, Ex'tr,* v. *Coler,* and following the conclusion there reached, we are unable to distinguish that case from the present one.

If a state inheritance law can validly impose a tax measured by the amount or value of the legacy, even if that amount includes United States bonds, the reasoning that justifies such a conclusion must, when applied to the case of a Federal inheritance law taxing the very same legacy, bring us to the same conclusion. We must, therefore, hold that if, as held in *Knowlton* v. *Moore,* the tax imposed under the act of June 13, 1898, is not invalid as a direct, unapportioned tax, nor for want of uniformity, nor as an infringement upon the laws of the states regulating wills and descents, then the tax upon legacies or be-

quests, descendible under and regulated by state laws, is valid, even if such legacies incidentally are composed of Federal bonds.

It cannot be denied that the government of the United States has, and has heretofore exercised, the power to tax its own bonds. By the act of July 1, 1862, 12 Stat. 474, there was imposed a tax upon the interest on United States bonds at one half the rate of the tax imposed upon the income of other property; and by the acts of June 30, 1864, 13 Stat. 281 and 479, the discrimination in favor of the holders of United States bonds was abandoned, and the interest on them was taxed at the like rates as other income.

The argument in this case turns, at last, upon the proposition that, by the exempting clauses in the statutes and on the face of the bonds, the United States entered into a contract with those who should buy and hold the bonds that neither principal nor interest should be taxed.

Whether the United States, in the exercise of the power of taxation, can be estopped by a contract that such power shall not be exercised, we need not consider, because the contract in this case does not, as we view it, mean that a State may not, or the United States may not, tax inheritances and legacies, regardless of the character of the property of which they are composed. That some of the holders of United States bonds may have paid franchise taxes to the States, and others may have paid state or Federal inheritance and legacy taxes, has nothing to do with the contract between the United States and the bondholders. The United States will have complied with their contract when they pay to the original holders of their bonds, or to their assigns, the interest, when due, in full, and the principal, when due, in full.

These views demand an affirmance of the judgment of the Circuit Court sustaining the defendant's demurrer to the complaint.

We observe that it appears in the schedule of legacies prepared by the executor in this case, on a form apparently furnished by the collector of internal revenue, that several of the legacies under Mrs. Sherman's will were for sums under ten thousand dollars, and which were, therefore, under the construc-

tion put by this court on the statute in *Knowlton* v. *Moore*, not taxable. It also appears that the theory on which the taxes were computed in respect to legacies over ten thousand dollars was by measuring the tax by the amount of the entire estate, instead of by the amount of each legacy. This method of construing and applying the statute we have held, in *Knowlton* v. *Moore*, to be erroneous. Therefore, the executor, representing the respective legatees, is entitled to recover back the amount of taxes paid on legacies under ten thousand dollars, and likewise such excess of taxes as was paid by reason of the erroneous interpretation of the statute.

We here meet the formal difficulty that neither the complaint in the Circuit Court nor the assignments in error in this court apparently questioned the correctness of the construction put upon the statute by the collector. The questions raised and considered only involved the validity of the act, and not its construction if valid.

As, however, the parties proceeded on a mutual mistake of law, we think the practical injustice that might result from an affirmance of the judgment may be avoided by reversing the judgment at the cost of the plaintiff in error, and sending the cause back to the Circuit Court with directions to proceed therein according to law.

*And accordingly it so ordered.*

MR. JUSTICE WHITE dissented in respect to the taxability of the bonds.

MR. JUSTICE PECKHAM took no part in the decision of the case.