A. Crawford GREENE and Wells Fargo Bank & Union Trust Co., a Corporation, as Executors, etc.

v.

UNITED STATES.

No. 539-53.

United States Court of Claims.

March 4, 1959.

Walker W. Lowry, San Francisco, Cal., for plaintiffs. Richard E. Guggenhime, Allan P. Matthew and Edward W. Rosston, San Francisco, Cal., were on the brief.

Theodore D. Peyser, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

JONES, Chief Judge.

Plaintiffs[1] seek a refund of taxes in the amount of $1,113,937.37, plus interest thereon, which amount was assessed and paid by reason of the inclusion of certain United States 3% Panama Canal loan bonds in the gross estate of the decedent for Federal estate tax purposes. Plaintiffs base their claim on the ground that the plain language of the statute authorizing the issuance of these bonds and the language on the face of the bonds provide a broad and comprehensive tax exemption which necessarily includes Federal estate taxes.

■ These Panama Canal bonds were authorized by the act of August 5, 1909 (36 Stat. 11, 117), which provided in section 39, 31 U.S.C.A. § 745, that:

"* * * the bonds herein authorized shall be exempt from all taxes or duties of the United States, as well as from taxation in any form

by or under State, municipal, or local authority * * *."

On the face of the bonds appears the following language:

"The principal and interest are exempt from all taxes or duties of the United States as well as from taxation in any form by or under State, Municipal or local authority."

Plaintiffs argue that "all taxes" means all taxes, including Federal estate taxes; that "duties" is a term of art which includes Federal estate taxes, and that certain case law relied upon by the Government is either distinguishable or in error.

The Government construes the phrase "all taxes" to mean all taxes on the bonds themselves, and contends that the Federal estate tax is not a tax upon the property comprising the estate but is a tax upon the right to transfer such property at death. The language of section 810 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 810, which imposes a tax upon "the transfer of the net estate of every decedent", and case law support the Government's contention.

The earliest cases on this problem were Plummer v. Coler, 178 U.S. 115, 20 S.Ct. 829, 44 L.Ed. 998, and Murdock v. Ward, 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009, both decided in 1900. Plummer held that a Federal exemption "from taxation in any form by or under state, municipal or local authority" did not exempt certain 1870 Federal bonds from a State inheritance tax. Plaintiffs analyze Plummer as involving solely a constitutional problem, to wit, whether the right to regulate the passage of property at death is strictly within the powers reserved to the States, and as holding that the Federal Government cannot limit that power.

Murdock v. Ward, supra, held that a Federal exemption from "all taxes and duties of the United States" did not exempt these 1870 bonds from the 1898

---

[1] Plaintiffs herein are executors of the last will and testament of Gordon Blanding, who died September 11, 1945, and trustees of the trust created by the last will and testament of said decedent.

Federal inheritance tax. Plaintiffs urge that the case is distinguishable because it involved an inheritance tax, a tax upon the right of the legatee or devisee to receive the property of the erstwhile owner, and not an estate tax which is a tax on one of the attributes of ownership; i.e., the right to transfer one's property. Plaintiffs take the position that the Supreme Court, in Murdock v. Ward, supra, erred in placing reliance upon the Plummer case, which involved primarily a constitutional issue. In both cases, the rationale relied upon by the Supreme Court was that the inheritance tax was not a tax upon the bonds themselves, but a tax upon the transfer of the bonds. Plaintiffs urge that, in any event, the Supreme Court decided Murdock v. Ward, supra, erroneously because it failed to look to the legislative history of the 1870 bonds to see what Congress meant when it exempted the bonds from "all taxes or duties of the United States." Both parties in the present litigation rely upon that same legislative history, and we shall discuss it later in this opinion.

Subsequent to the decisions in Plummer and Murdock, supra, the rationale that certain taxes, such as estate or gift taxes, are not taxes upon the property but merely taxes upon the right to transfer the property has been followed. United States Trust Co. of New York v. Helvering, 1939, 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104; Hamersley v. United States, 1936, 16 F.Supp. 768, 83 Ct.Cl. 687; Waud v. United States, 1931, 48 F. 2d 444, 71 Ct.Cl. 567; Chase Nat. Bank of City of New York v. United States, 1929, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405; Greiner v. Lewellyn, 1922, 258 U.S. 384, 42 S.Ct. 324, 66 L.Ed. 676; New York Trust Co. v. Eisner, 1921, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963.

This distinction is clearly stated in the case of United States Trust Co. of New York v. Helvering, supra, passing on whether the proceeds of a war risk insurance policy payable to the widow on the veteran's death should be included in his gross estate for estate tax purposes, from which we quote, 307 U.S. at page 60, 59 S.Ct. at page 693, the following:

" * * * Exemptions from taxation do not rest upon implication.

"An estate tax is not levied upon the property of which an estate is composed. It is an excise imposed upon the transfer of or shifting in relationships to property at death. The tax here is no less an estate tax because the proceeds of the policy were paid by the Government directly to the beneficiary; the taxing power was nevertheless exercised upon 'the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another.' In an analogous situation, Federal bonds exempt by statute from all taxation have been held subject to a Federal inheritance tax. And State inheritance taxes can be measured by the value of Federal bonds exempted by statute from State taxation in any form."

The plaintiffs also insist that the holding in Murdock v. Ward, supra, has been qualified and limited in the case of Oklahoma Tax Commission v. United States, 1943, 319 U.S. 598, 63 S.Ct. 1284, 87 L. Ed. 1612, and in Landman v. United States, 1945, 58 F.Supp. 836, 103 Ct.Cl. 199. A careful reading of these decisions will show clearly that they were exceptions to the general rule and are not applicable to the instant case. They involve tax-exempt Indian land. Indians being wards of the Government, an entirely different and more liberal rule applies to them.

The only other exception involves tax exemptions for aliens. The legislative history shows that Congress did not intend to subject alien holders of the exempt bonds to Federal estate taxes. Jandorf's Estate v. Commissioner, 2 Cir., 1948, 171 F.2d 464; Pennsylvania Co. for Banking & Trusts v. United States, 3 Cir., 1950, 185 F.2d 125.

As plaintiffs point out, no case involving these Panama Canal bonds has been

decided and none of the cases cited would be controlling if we could find that Congress, in enacting the tax exemption provision in these Panama Canal bonds, did, in fact, intend to relieve the bonds from Federal estate taxes. In support of its argument that such was the intention of Congress, plaintiffs maintain (1) that the legislative history of the prototype of the exemption provision here involved shows such an intention, and (2) that the historical background of the word "duties" shows that the word refers to "death duties" such as estate taxes and that therefore Congress in using that word intended to exempt these bonds from the payment of estate taxes.

The legislative history of the statute authorizing the issuance of the Panama Canal bonds is, as both parties concede, unenlightening as to the particular issue involved here. By way of analogy the parties rely upon the legislative history accompanying the act of July 14, 1870 (16 Stat. 272), which authorized the first issue of Federal bonds exempt from "all taxes or duties of the United States," and which exemption provision is the prototype of the exemption clause involved in this suit. The exemption clause in the 1870 act was the provision construed by the Supreme Court in Murdock v. Ward, supra, and it is this same legislative history which plaintiffs claim was not considered by the Supreme Court in reaching what the plaintiffs assert was an erroneous result in that case.

When the 1870 tax exemption provision was introduced in Congress, there was vigorous opposition to it. Debate on the measure was only in terms of the income tax. See 41 Cong. Globe pp. 1877–1880; 5021–5025. Plaintiffs say that the mention of the income tax was merely for purposes of illustration, and that Congress intended to make these bonds free of all taxes, of whatever nature and however levied, and that this tax exemption was absolute. These 1870 bonds were issued at the beginning of a period when the Government's method of financing the public debt was to issue bonds at a low interest rate, but with a tax exemption to insure marketability and to make the bonds attractive to prospective purchasers.

Whether Congress in 1870 thought that it had to make, and did make, these bonds tax free in the absolute sense contended for by plaintiffs is the question for the court to decide. The language of the exemption does not require such an absolute exemption, unless "duties" is a term of art necessarily including Federal estate taxes, an argument which we will discuss later in this opinion. The language of the exemption does not give a clear answer; the legislative history also fails to provide a clear-cut answer to the question of the legislative intention. It is possible that the reference to income tax during the debates was merely for purposes of illustration, as plaintiffs suggest, but it was stated during the debates that the only tax which could apply to these bonds would be the income tax, because otherwise the tax would be a direct tax and would have to be apportioned. See 41 Cong. Globe 1591.

Plaintiffs say the debate shows that Congress thought it was surrendering all rights to tax in reference to these bonds. The language of the debates gives such a general impression, but that general language is colored and limited by the frequent references to income taxes as the sole tax which could be imposed upon these bonds. The Government says that if Congress had intended to exclude the inheritance tax from the scope of the 1870 exemption, it would have said so in view of the fact that there was then on the books a Federal inheritance tax law. However, that inheritance tax law was repealed by the act of July 14, 1870 (16 Stat. 256, 257), such repeal to become effective October 1, 1870. Although the Federal inheritance tax law was not effectively wiped off the statute books until October 1870, Congress had decided to repeal it, and there was no reason to discuss its applicability to the bond issue, but neither can we draw any conclusion from the failure to discuss the Federal inheritance tax as plaintiffs would have us do.

For all practical purposes, there was in existence at the time of the 1870 bond issue no Federal inheritance tax and certainly no Federal estate tax law. The first estate tax law was not imposed until the act of 1916 (39 Stat. 756).

The situation in the case of the Panama Canal bonds and the Federal estate tax is somewhat analogous to the situation of the Liberty Loan bonds and the Federal gift tax. The Liberty Loan bonds (second and third issues) were exempted "from all taxation, except estate or inheritance taxes, imposed by authority of the United States, or its possessions, or by any State or local taxing authority." Act of April 24, 1917, 40 Stat. 35, 31 U.S.C.A. § 746. At the time these Liberty Loan bonds were issued, there was not and had never been a gift tax. Congress was apparently aware of the problem of estate and inheritance taxes and expressly excluded them from the scope of the tax exemption.

When the Federal gift tax law was later enacted, holders of the Liberty Loan bonds urged that the bonds were not subject to the gift tax, because Congress had expressly excluded only estate and inheritance taxes from the scope of the exemption. However, this court and the Tenth Circuit held that such bonds were not subject to estate or inheritance taxes in the first place and that the exception to the exemption added nothing; i. e., that estate and inheritance taxes were not taxes upon the bonds in the first instance and therefore expressly excluding such taxes from the scope of the tax exemption did not, under the rule of *expressio unius est exclusio alterius,* show an intent to exempt the bonds from the gift tax. Hamersley v. United States, supra; Phipps v. Commissioner of Internal Revenue, 10 Cir., 1937, 91 F.2d 627.

In the case of the Panama Canal bonds we look to the legislative history of the prototype exemption clause found in the 1870 act. Congress in 1898 enacted a Federal inheritance tax law, and the Supreme Court, in Murdock v. Ward, supra, found that the 1870 tax-exempt bonds were subject to the 1898 inheritance tax.

The conclusion reached in that decision was that the inheritance tax was not a tax on the bonds but a tax upon the right to transfer the bonds. We do not believe that the Supreme Court reached that decision by confusing the constitutional issue of the Plummer case, as plaintiffs suggest, and we do not think that the Supreme Court overlooked any legislative history which would have pointed conclusively to a different result. It is this same legislative history which this court is now examining; i. e., the legislative history of the 1870 act.

Our problem becomes more complicated when it is remembered that this same language of the 1870 act was adopted in the 1909 act without comment, and without any indication that the Murdock decision might have changed the original meaning of that exemption clause. Plaintiffs say there is no reasonable ground for a court to conclude that Congress when it adopted the exemption clause in 1909 had in mind the interpretation placed upon that clause by the Supreme Court in the Murdock v. Ward, supra, decision. They claim there was no indication that the Congress was aware of that decision. On the other hand, we have no basis for finding that Congress was unaware of that decision. A parallel is found in the provision for issuing the Liberty Loan bonds in which the question of gift taxes was not mentioned. But since the Federal gift tax is not a tax on the bonds as such, the failure to expressly exclude such taxes did not have the effect of making such gift taxes exempt. The same conclusion would logically follow in construing a similar clause applying to estate taxes.

The second argument which plaintiffs advance to support their theory that Congress intended to exempt the Panama Canal bonds from Federal estate taxes is the argument that the word "duties" as used in the exemption provision refers to death duties such as Federal estate taxes, and therefore the use of that word shows that Congress intended to exempt Federal estate taxes. Historically, the term "duties" was frequently used when re-

ferring to "death duties" such as inheritance taxes. This is shown in the discussion of the history of such taxes or duties in Knowlton v. Moore, 1900, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969. However, from 1861 to 1866 income taxes were referred to as income "duties".[2] After 1870 the use of the term "duties" when referring to income taxes appears to have been dropped. Plaintiffs urge that when speaking of "death duties" such as inheritance taxes or estate taxes, the Congress always used the phrase "duties or taxes" or "taxes or duties".[3]

However, the word "duties" has frequently been used by the Congress, the courts, and lawbook writers to mean taxes such as probate duties, income duties, and similar taxes. It is often used in reference to imports or customs. At any rate the use of that term alone, without further explanation, does not show a legislative intention to exempt the bonds from all death duties, including Federal estate taxes.

It is equally possible that Congress was using the term "duties" as being synonymous with the term "taxes". There is support for that view when we consider that up to about 1870 Congress also used the term "duties" when referring to income taxes, and in the act of July 13, 1866 (14 Stat. 98), Congress provided that whenever the word "duty" appeared in the income tax law it was to be construed to mean "tax". Thus Congress expressly equated the two terms, and it is quite likely that the use of both "taxes" and "duties" in the exemption clause meant no more than the word "taxes" alone would mean, and that its use was merely a vestigial clinging to the old and meaningless term.

■ This interpretation is strengthened when we consider that the use of the phrase "taxes or duties" in the 1870

bonds was held in Murdock v. Ward, supra, and we believe correctly so, not to prevent the imposition of one type of death duties; i. e., inheritance taxes. There seems to be no compelling reason to conclude that the use of that same phrase would prevent the imposition of the type of death duties involved in this litigation; i. e., Federal estate taxes. Tax exemptions are normally to be construed narrowly, and are not to be found by implication. United States v. Stewart, 1940, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40; United States Trust Co. of New York v. Helvering, supra; Merchants Nat. Bank of Mobile v. United States, 1941, 37 F.Supp. 931, 93 Ct.Cl. 464.

■ We hold that the words "taxes" and "duties" as used in the statute involved in the instant case and as used in the bonds issued thereunder were meant by the Congress to exempt the principal and interest of such bonds from taxes levied by the United States, as well as taxes levied by any State, municipality, or local authority, and were not intended and did not have the effect of exempting a decedent's gross estate from estate taxes, which are a tax not upon the property itself, but upon the transfer or shifting of ownership of such property.

Plaintiffs' petition will be dismissed.

It is so ordered.

LARAMORE and WHITAKER, Judges, concur.

MADDEN, Judge (concurring in the result).

I concur in the decision because I think we are not free to inquire as to the intent of Congress, in view of the Supreme Court decisions discussed in the opinion of the court.

2. See act of August 5, 1861, 12 Stat. 292; act of July 1, 1862, 12 Stat. 432; act of March 3, 1863, 12 Stat. 713; act of June 30, 1864, 13 Stat. 223; act of March 3, 1865, 13 Stat. 469; act of July 13, 1866, 14 Stat. 98.

3. See act of July 6, 1797, 1 Stat. 527; act of July 1, 1862, 12 Stat. 432, 485; act of June 30, 1864, 13 Stat. 223, 286; act of July 13, 1866, 14 Stat. 98, 140; act of June 13, 1898, 30 Stat. 448.