CHARLOTTE W. COCHRANE *vs.* COMMISSIONER OF
CORPORATIONS AND TAXATION.

Middlesex.     January 6, 1966. — February 8, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Taxation,* Succession tax. *Pension. Annuity. Retirement.*

Where a retired Navy officer entitled to retirement pay in monthly instalments exercised a statutory option "to provide a pension for" his wife to be paid to her monthly after his death until her death or remarriage, and by such election reduced the amount of his monthly retirement pay for the rest of his life, the payments made to his wife after his death had the characteristics of proceeds of life insurance and their commuted value was not subject to the succession tax imposed by G. L. c. 65, § 1. [240]

A death benefit paid by a pension association formed under G. L. c. 32, §§ 39, 40, to the widow of a member of the association upon his death in accordance with its by-laws was not exempted by § 41 from the succession tax imposed by c. 65, § 1. [245]

PETITION IN EQUITY filed in the Probate Court for the county of Middlesex on March 18, 1964.

The case was reserved and reported by *Leggat, J.*

*James W. Noonan* for the petitioner.

*Herbert E. Tucker, Jr.,* Assistant Attorney General (*William A. Shue* with him), for the respondent.

CUTTER, J. This is an equity petition brought in the Probate Court seeking abatement of a succession tax assessed by the commissioner with respect to a Navy annuity

and to death benefits paid or to be paid to Mrs. Cochrane, the widow of a vice-admiral in the United States Navy. Admiral Cochrane retired on November 1, 1947. He died on November 14, 1959. Mrs. Cochrane was named executrix of his will. By amendment to the petition she, in her capacity as executrix, was joined as a petitioner. Upon the pleadings and a stipulation constituting a case stated, the case has been reserved and reported without decision for the determination of this court.

The two principal issues are discussed separately below. One concerns Admiral Cochrane's exercise of a statutory option in connection with his Navy retirement pay. This, as has been stated, resulted in the payment of an annuity to Mrs. Cochrane beginning with his death. The other issue relates to death benefits paid to Mrs. Cochrane by the Massachusetts Institute of Technology (MIT) Pension Association.

The usual inheritance tax forms (L–1, L–3, L–16A) were filed with the Inheritance Tax Bureau. Attached to form L–3 was a schedule showing the annuity to be paid to Mrs. Cochrane by the Navy and the benefits to her by the MIT Pension Association. The Bureau's determination of the value of Admiral Cochrane's assets characterized these payments and benefits as "property of" Admiral Cochrane passing "by deed, grant or gift made or intended to take effect in possession after . . . [his] death." The Bureau rejected Mrs. Cochrane's request for a revaluation omitting these items. A sum has been paid by Mrs. Cochrane, either as executrix or individually, on account of the inheritance tax, which represents "the full inheritance tax which, as computed by . . . [her], would be due if" the Navy annuity and all MIT benefits were in effect subject to that tax.

### THE RETIRED SERVICEMAN'S FAMILY PROTECTION PLAN.

Upon his retirement Admiral Cochrane became entitled to receive, until his death, retirement pay in monthly instalments of $744.70. On April 30, 1954, pursuant to what was at his death 10 U. S. C. § 1431 (1958) and related stat-

utes,[1] he "elected to provide a pension for" Mrs. Cochrane "after his death in the amount of one half of the . . . retirement pay thereafter receivable by him to last until . . . [her] death or remarriage." See 37 U. S. C. § 373 (a) (Supp. II, 1955), option (1) at fifty per cent. See also 10 U. S. C. § 1434 (a) (Supp. V, 1958). As a result of this election his monthly retirement payments were reduced by $129.35, effective April 1, 1954. Thereafter his monthly retirement payment was $615.35. Upon his death, Mrs. Cochrane began to receive (effective November 1, 1959, see 10 U. S. C. § 1437 [1958]) monthly payments of $307.68, as a consequence of the admiral's election. "The commuted value of the payments received and to be received by her . . . is $28,787.77."

In essence, Admiral Cochrane accepted a reduction of $129.35 in his monthly retirement pay for the remainder of his life in return for a government obligation to pay to his wife, if she survived him, the sum of $307.68 per month from his death until her death or remarriage. The statute provided for an actuarial computation of the reduction in Admiral Cochrane's retirement pay necessary to justify the government commitment to make this payment to Mrs. Cochrane. See 37 U. S. C. § 373 (c) and also § 377 (Supp. II, 1955); 10 U. S. C. § 1436, and also § 1443. In every sense, it was precisely as if the admiral had agreed to pay a monthly premium of $129.35 under a life insurance policy for a specified death benefit payable to his widow in equal monthly instalments during her life or until her remarriage. The arrangement is comparable to the annuity options often available under life insurance policies. See *Commissioner of Int. Rev.* v. *Pierce,* 146 F. 2d 388, 389–391 (2d Cir.).

The government, upon the exercise of the option, took the new risk that Admiral Cochrane might live for a shorter

---

[1] The statutory provisions have been revised from time to time. See 37 U. S. C. §§ 371–381 (Supp. II, 1955). See also, among other statutes, 67 Stat. 501–505 (1953); 10 U. S. C. §§ 1431–1444 (1958); 10 U. S. C. §§ 1431–1446 (1964). It does not appear that the various changes in the statutes since 1953 are material to the decision of this case.

period (thus permitting fewer deductions from his retirement pay) and that his wife might live longer than the actuaries expected, with the consequence that the government would lose by the bargain. Admiral Cochrane took the risks (a) that his wife would not survive him, or (b) that she would live less long after his death than the actuaries thought probable. There existed, when the option was exercised, the type of actual insurance risk regarded as essential to an insurance contract. See *Helvering* v. *Le Gierse,* 312 U. S. 531, 539.

We hold that the annuity from the Navy which Mrs. Cochrane began to receive at her husband's death had the characteristics of life insurance, which is not subject to the excise imposed by the Massachusetts inheritance tax law. No excise under G. L. c. 65, § 1, as amended, is due with respect to the receipt by Mrs. Cochrane either of the Navy annuity payments or of their commuted value. *DeVincent* v. *Commissioner of Corps. & Taxn.* 348 Mass. 758, 759–761, and cases cited. See Rev. Rul. 65–57, 1965–1 C. B. 56; Paul, Federal Estate and Gift Taxation, §§ 10.07–10.11. This is not an annuity of the type discussed in *Gregg* ·v. *Commissioner of Corps. & Taxn.* 315 Mass. 704, 707–709, where the company paying the annuity "took no risk whatever."

In view of our conclusion that the exercise of the option constituted a transaction having the characteristics of life insurance exempt from inheritance tax, there is no occasion for considering Mrs. Cochrane's contention that, in any event, Admiral Cochrane's interest in the Navy retirement pay and the Navy annuity for her did not constitute his "property" within the meaning of G. L. c. 65, § 1.

## THE MASSACHUSETTS INSTITUTE OF TECHNOLOGY PENSION.

On September 1, 1947, Admiral Cochrane was appointed to a professorial post at MIT. Thereafter until his retirement on June 30, 1957, he was a member of the MIT Pen-

sion Association, which had been formed under G. L. c. 32, §§ 39 and 40.   Its by-laws were first approved by the Commissioner of Insurance in 1927.   The by-laws in effect at Admiral Cochrane's death were so approved in 1958.

While Admiral Cochrane was a member of the association, he contributed to the association $6,611.65 in salary deductions.   On December 31, 1959, Mrs. Cochrane was paid by the association $16,591.38 in settlement of death benefits.[2]

General Laws c. 32, § 41, relating to pension associations formed under c. 32, §§ 39 and 40, reads, "The property of every such association, the portion of the wages or salary of an employee deducted or to be deducted under the two preceding sections, *the right of an employee to an annuity, pension or endowment, and all his rights in the funds of the association, shall be exempt from taxation* and from the operation of any law relating to bankruptcy or insolvency, and shall not be attached or taken on execution or other process to satisfy any debt or liability of the employer or of any member of the association.   No assignment of any right in or to said funds or of any pension, annuity or endowment payable under section thirty-nine or forty shall be valid" (emphasis supplied).   Mrs. Cochrane contends that, by virtue of this provision, no succession tax can be collected with respect to the death benefits paid to her by the association.   She does not assert, however, that the MIT benefits have the characteristics of life insurance.

Under the by-laws of the association, members included most persons of professorial rank (with exceptions not here pertinent) on July 1, 1955, or appointed thereafter, and certain MIT staff members with five years of service.   Salary deductions of five per cent of each member's base salary were to be paid into the pension fund by MIT.   To these funds MIT was to add annually three per cent "of the regular base salaries of all participating members."

---

[2] On the same day she was paid $6,221.77 pursuant to the Supplementary Retirement Plan for Staff Members of MIT, a separate entity not formed under G. L. c. 32, §§ 39, 40.   Mrs. Cochrane does not contend that this sum was exempt from succession tax.

MIT was obliged to pay to the association or to another MIT pension fund sums sufficient to permit the payment of pensions stated in § VII of the by-laws.[3]

The commissioner contends that the exemption (§ 41) does not relieve Mrs. Cochrane of the excise imposed under G. L. c. 65, § 1, upon Mrs. Cochrane's privilege of succeeding to the death benefits, resulting from association funds in which Admiral Cochrane had at least an indirect interest at the time of his death. The excise, of course, is not a property tax upon the admiral's interest in the fund, although its economic and practical effect may be much the same as that of a property tax. Mrs. Cochrane submits that § 41 is broad enough in terms to preclude the commissioner's imposition even of this excise upon the death benefits.

Section 41 grew out of the report of the Special Commission on Old Age Pensions (Res. 1907, c. 127), filed in January, 1910. See 1910 House Doc. No. 1400, pp. 325–326, 348–349; Nichols, Taxation in Massachusetts (3d ed.) 246. Following that report, St. 1910, c. 559, was enacted. Section 3 contained a tax exemption provision in language which closely resembled the present provisions of § 41. Of this exemption, it was said in *Opinion of the Justices,* 324 Mass. 724, 731, that it was one of a class of exemptions which relate to "property . . . devoted to uses of a public [or] quasi public . . . nature or to . . . charitable or philanthropic enterprises which tend in some measure directly or indirectly to relieve public burdens." The intended

---

[3] Section VII reads in part, "Upon . . . retirement for age . . . such member shall receive an annual pension equal to the annuity provided by the accumulated principal and interest of his contributions . . . plus an additional annuity of equal amount, provided by the [a]ssociation. However, upon the request of a retiring member . . . the [a]ssociation may continue to hold at interest all accumulated funds, including funds provided by the . . . [a]ssociation, for the benefit of the retiring member, and either purchase or pay an annuity beginning at such later date as is approved by the [t]rustees." By § X, it is provided in part, "In case of the death of a participating member after retirement while the . . . [a]ssociation is holding funds for his benefit, as provided in Section VII above, such funds shall be paid to his designated and surviving beneficiary, or if there is none to his executor or administrator, in full discharge of all his interest in the . . . [f]und."

scope of the exemption must be determined in the light of the tax situation which existed in Massachusetts in 1910, and of general principles applicable to the interpretation of exemption provisions in Massachusetts and elsewhere.

In 1910, the Massachusetts tax laws had recently been codified. Statute 1909, c. 490, Part I, §§ 2–4, imposed a property tax at the local property tax rate upon "[a]ll property real and personal situated within the commonwealth," and "all personal property of . . . inhabitants . . . wherever situated, unless expressly exempted." "Personal property" plainly included not only tangibles and money (§ 4, First), but also "[m]oney at interest" and certain debts (§ 4, Second) and various stocks and securities (§ 4, Third). The statute (§ 4, Fourth) also purported to tax as personal property the "income from an annuity"[4] and certain business income.[5]

It is thus apparent that in 1910, unless the Legislature had provided a specific exemption, the tax laws would have permitted the imposition of local property taxes upon a participating member's interest in the funds of an association like the MIT Pension Association and upon the amounts received by such a member as annuities from the association. Accordingly, there existed good reason for providing a statutory exemption from such a property tax,

---

[4] Such taxation of annuities began in 1836. See Amendments to the Report of the Commissioners Appointed to Revise the General Statutes, p. 3; Rev. Sts. c. 7, § 4 (1836). See also *Williston Seminary* v. *County Commrs. of Hampshire,* 147 Mass. 427, 430. Cf. *Mutual Benefit Life Ins. Co.* v. *Commonwealth,* 227 Mass. 63, 66.

[5] This method of taxation was much modified by St. 1916, c. 269, the first Massachusetts income tax law after the adoption of the Forty-Fourth Amendment to the Constitution of the Commonwealth. See 1916 House Doc. No. 1700, pp. 37, 49–50, 110; 1916 House Bill No. 2073, p. 8; 1916 House Doc. No. 2118, pp. 4, 9–10; Nichols, Taxation in Massachusetts (3d ed.) 463–472, 488–489. The local tax on annuities and on money at interest was then superseded by the State-collected income tax upon annuity income or upon interest. G. L. c. 62, §§ 1 (a), 5 (a), as amended from time to time. *Bacon* v. *Commissioner of Corps. & Taxn.* 266 Mass. 547, 549. The Massachusetts income tax is a property tax and not an excise. See *State Tax Commn.* v. *Wheatland,* 343 Mass. 650, 652–653. It is unnecessary, however, now to consider whether c. 32, § 41, would have provided any exemption from taxes imposed by c. 62, if that had not been done expressly by c. 62, § 8 (g), most recently amended by St. 1962, c. 576, § 1.

if, as it appears to have been, it was the legislative intention to have participating members receive their annuities from such an association and to maintain their direct and indirect interests in its funds, unburdened and undiminished by property taxation.

The encouragement of pension and retirement provisions of this type doubtless actuated the Legislature in enacting what is now § 41. This motive might also have led the Legislature to exempt the association's death benefits, when received by a participating member's widow or dependents, from inheritance and succession taxes imposed under G. L. c. 65, § 1. This, however, has not been done by any explicit language of § 41, nor is it contended that any such exemption has been provided by G. L. c. 65, § 1, as amended.

In general, statutes in terms exempting property from taxation have been interpreted as precluding only property taxation of that property. This type of exemption usually has not been viewed as preventing the imposition of an estate or succession excise upon the transmission or receipt of the property upon the owner's death. See *Plummer* v. *Coler,* 178 U. S. 115, 134–138 (State inheritance tax measured by a decedent's United States bonds); *Murdock* v. *Ward,* 178 U. S. 139, 147; *United States Trust Co.* v. *Helvering,* 307 U. S. 57, 60 (benefits under war risk insurance policy subject to Federal estate tax); *Greene* v. *United States,* 171 F. Supp. 459, 461 (Ct. Cl. — Panama Canal bonds), and cases cited; *Estate of Simpson,* 43 Cal. 2d 594, 597–603 (death benefits under county retirement system); *Estate of Stone,* 10 Wis. 2d 467, 471–477 (retirement benefits treated as subject to inheritance tax under particular Wisconsin statutes); annotations, 39 A. L. R. 2d 698, and 47 A. L. R. 2d 999, 1014–1017. See also *Estate of Endemann,* 307 N. Y. 100, 106; *Estate of Schaeffer,* 130 Misc. (N. Y.) 436. Cf. *Belefski Estate,* 413 Pa. 365, 375 (exemption from "*any* state tax" includes inheritance tax); *Enbody & Burke Estates,* 85 D. & C. (Pa.) 49. Cf. also *Estate of Morrison,* 130 Misc. (N. Y.) 438. Of course, where the legislative purpose to exempt "is evident enough, we should not de-

feat or mutilate its realization.'' See L. Hand, Cir. J., in the *Pierce* case, 146 F. 2d 388, 390 (2d Cir.), *supra.*

We have weighed conflicting considerations affecting § 41 (including the legislative desire to encourage retirement funds and the tendency to a limited interpretation of exemptions, see *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.* 343 Mass. 613, 620). We conclude that the statute does not disclose an intention to exempt from the succession tax death benefits like those from the MIT association. The purpose of the 1910 exemption appears to have been to achieve exemption of the interests of participating members in such retirement funds only from property taxes. If a broader exemption had been intended, a more explicit provision to that effect would have been appropriate.[6]

In the Probate Court, a decree is to be entered ordering abatement and refund of the succession excise assessed with respect to the commuted value of Mrs. Cochrane's Navy annuity, determined as of the date of Admiral Cochrane's death, with interest. See G. L. c. 65, § 27 (as amended through St. 1953, c. 654, § 90).

*So ordered.*

---

[6] The amendment by St. 1945, c. 658, § 1, of the similar exemption provision affecting public retirement systems and payments (see G. L. [Ter. Ed.] c. 32, § 37, as it read prior to 1945) provides an example of a sufficiently broad exemption provision to preclude a succession tax. See G. L. c. 32, § 19 (as amended through St. 1956, c. 691). That § 41 was not amended in 1945 is not surprising. The commission (see Res. 1943, c. 49) which recommended the 1945 amendments was engaged primarily in studying public retirement systems. 1945 House Doc. No. 1950, pp. 1 et seq., 110–111. It would probably have had little occasion to examine § 41. Accordingly, we give no weight to the circumstance that in 1945, § 41 was not amended.